62 So.2d 451
**MULLIS v. STATE.**
I Div. 467.

Supreme Court of Alabama.
June 26, 1952.

Rehearing Denied Jan. 19, 1953.

Douglas Standard and Wm. Grayson, Mobile, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

STAKELY, Justice.

The appellant, Harris Mullis, Jr., was indicted for the offense of murder in the first degree. He entered a plea of not guilty and a plea of not guilty by reason of insanity. The jury returned a verdict of guilty as charged in the indictment and fixed the punishment at death by electrocution. From this sentence and the judgment thereon, this appeal comes here under the automatic appeals act.

On February 7, 1951, Luther Hardison, a Constable of the Third District of Dade County, Florida, left his home alone in his car to go to Los Angeles, California, in order to bring back Harris Mullis, Jr. (appellant), a prisoner there, to face criminal charges in Florida. He had with him in the car handcuffs, a pistol in a holster, a tear gas gun, a restraining belt, a blackjack, legirons and around $600 in cash. About the 16th of February, 1951, Luther Hardison's son, who was stationed in Ran-

dolph Air Base Force in San Antonio, Texas, saw his father on his way back from California and he had with him at that time Harris Mullis, Jr. On the 17th of February, 1951, Luther Hardison met his death in Mobile County as the result of gunshot wounds. He was found lying in a ditch by the side of a road several miles from the City of Mobile. A number of newspapers of Los Angeles, California, were scattered around at the place where his body was found. At this place was also found a blanket on which there were blood stains. The automobile of deceased was discovered in New Orleans, Louisiana. It contained several of the items belonging to the deceased and there were spots of blood on the floor in the car.

Harris Mullis, Jr., was arrested in the City of New York on February 24, 1951, while trying to sell a pistol to a pawn broker in that city. The evidence shows that this pistol was the one belonging to the deceased and the one he had with him just prior to his death. Harris Mullis, Jr., made a confession in New York in which he stated that he killed the deceased in Mobile County.

I. During the qualification of jurors the attorney for the defendant asked the following question: "Now do any of you gentlemen believe in the doctrine of an eye for an eye and a tooth for a tooth; do you believe in that?" One juror stood up. "Q. You do believe in that? A. Yes." The juror was thereupon challenged for cause as being prejudiced. The court refused to allow the challenge, to which the defendant reserved an exception.

In the early period of all systems of law it seems that a rough sense of justice demanded the infliction of the same loss or pain upon the aggressor as he had inflicted on his victim. Hence the prominence of the "lex talionis" in ancient law. The law of ancient Israel was no exception. In its oldest form it included the law of measure for measure and in the Talmudic sayings the law is reflected that God punishes nations and man with sufferings nearly identical with those which they have sinfully inflicted upon others. The Jewish Ency. Vol. X, p. 385. It will be noticed that the law is applied to those who have sinfully inflicted harm upon others. But under the old Jewish Law there were provisions or modifications in the law to protect the killer where the killing was done accidentally or without premeditation. Cities of refuge were established to which the slayer could flee and where he would be protected when he was not worthy of death. Deut. 19, 2–13. There were other modifications in the law as for example, "Fathers shall not be put to death for the children, neither shall the children be put to death for the fathers." Deut. 24, 16; The Jewish Ency. Vol. X, p. 385.

We do not think that the question put to the juror and his answer constitutes a sufficient showing of the juror's belief as to evidence clearly his bias or prejudice. In other words, there is nothing to show that he would be willing to mete out punishment unless he was satisfied beyond a reasonable doubt from the evidence of the defendant's guilt. Certainly the statute, § 55, Title 30, Code of 1940, setting forth the various grounds for challenge for cause does not include the present situation. It is true that in addition to grounds for challenge for cause under the foregoing statute, grounds of challenge for cause under the common law still exist, when not inconsistent with the statute. Brown v. Woolverton, 219 Ala. 112, 121 So. 404, 64 A.L.R. 640. But where a common law ground is involved, there must either be some matter which imports absolute bias or favor and leaves nothing for the discretion of the court or a situation which presents a mixed question of law and fact to be determined by the trial court in its sound discretion. In the latter instance the action of the court must clearly amount to an abuse of discretion to warrant interference therewith. Brown v. Woolverton, supra. In the absence of a further showing as to the belief of the juror in the case at bar, we are not willing to say that the court was in error in not allowing the challenge for cause.

II. Exception was taken and a motion for a mistrial was based on the following remark made by the solicitor in his opening statement to the jury: "We expect to ask you at the appropriate time to

bring in a verdict of death in the electric chair." The court overruled the objection and denied the motion for a mistrial. In this ruling there was no error. The scope and latitude of an opening statement to the jury is to be controlled by the court in the exercise of its discretionary power. Punishment by electrocution is a punishment which the jury has the right to fix if it finds the defendant guilty of murder in the first degree and the solicitor in the proper discharge of his duties has the right so to recommend. The court did not abuse its discretion in allowing the solicitor to state in effect that the offense was of such a serious nature as to justify him in asking for punishment by death. And this is especially true since the court in its oral charge impressed upon the jury the fact that the duty rests upon the jury to fix the punishment. Ex parte State ex rel. Bailes, 235 Ala. 133, 177 So. 752; Nolen v. State, 35 Ala.App. 249, 45 So.2d 786, certiorari denied 253 Ala. 565, 45 So.2d 792; Pope v. State, 174 Ala. 63, 57 So. 245.

■ III. There was no error in refusing the motion to excuse the jury while the predicate was being laid for the purported confession of the defendant. A confession is prima facie inadmissible as evidence and it must be satisfactorily shown to the court that it is voluntary before it can be received in evidence. Banks v. State, 84 Ala. 430, 4 So. 382. The uncontradicted evidence in the case at bar shows that the confession was voluntary and properly admitted in evidence. So there is no room for contention here that the jury heard any matter that could be prejudicial. We do not mean to imply that the court might have abused its discretion in allowing the jury to remain in the jury box while the predicate was being laid, but simply hold that the question of prejudice is not presented when the evidence shows that the confession was voluntary.

■ IV. Likewise there was no error in reading portions of the signed written confession to the jury, the solicitor being of opinion that certain portions of the confession were inadmissible. The defendant had the right to introduce the entire confession in evidence. Chambers v. State,

26 Ala. 59. The right of the defendant was clearly stated when the court in this connection said: "You have a right when he closes his case to offer all the rest of it."

■ V. There was no error in allowing Antonio Givadaro, witness for the state, who is a detective of the Auto Theft Bureau, a division of the Police Department of New Orleans, to testify as to blood stains found in the automobile of the deceased and to identify as found in the automobile the handcuffs, leg shackles, gun holster, belt and blackjack, which other testimony showed was the property of the deceased. These articles tended to establish the identity of the car of deceased and all of this evidence tended to corroborate the confession, in which the defendant detailed his various movements from place to place after the commission of the crime, including his trip to New Orleans where he left the car.

■ VI. It is contended that a number of questions asked Mrs. Mullis, the mother of the defendant, should have been allowed under the issue made by the defendant's plea of not guilty by reason of insanity. While much latitude of proof is given both the state and defendant when this defense is interposed, it is pointed out in Eldridge v. State, 247 Ala. 153, 22 So.2d 713, that this is subject to the wise discretion of the court to limit the scope of the examination within due bounds, it being competent to show any circumstance or condition which might reasonably or naturally affect the defendant's mental condition at the time of homicide. In addition thereto, there must be some further foundation for probability laid by other evidence that there was a diseased mental condition. In the case at bar the court did not abuse its discretion in refusing to allow proof that when the defendant was 9 years of age, his father was not working and what the probation authorities did with him at that time and that as a child he was moody, quaint or peculiar. Eldridge v. State, supra; Naugher v. State, 241 Ala. 91, 1 So.2d 294; Smith v. State, 57 So.2d 513.

■ VII. The court was not in error in its charge to the jury as follows: "Now

314

emotional insanity, gentlemen, is not a defense, it must be a mental disease." Hall v. State, 208 Ala. 199, 94 So. 59; Grant v. State, 250 Ala. 164, 33 So.2d 466.

We have carefully examined the entire record and find no error.

Affirmed.

All the Justices concur.