246 So.2d 467

**Marvin Eugene FELTON**

v.

**STATE.**

**8 Div. 87.**

Court of Criminal Appeals of Alabama.

March 30, 1971.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

John C. Martin, William N. Pitts, Tuscumbia, for appellant.

## PER CURIAM.

The appellant was indicted, tried, convicted, and sentenced in the Circuit Court of Colbert County, Alabama, for the offense of murder in the first degree and his punishment was fixed at life imprisonment. The Honorable Leonard I. Burt, Circuit Judge, presided at said trial of the appellant. The verdict of the jury is as follows:

"We, the jury find the defendant guilty of murder in the first degree with sentence of life imprisonment."

When the jury returned its verdict and it was read in open court the presiding judge stated:

"There is a slight error in the wording of the verdict, 'with sentence of life imprisonment.' That is not in accord with the charge, do you waive that?"

The attorney for the defendant and the district attorney each answered and said, "Yes, sir." The jury was then polled by the appellant's attorney and each juror replied that the verdict was their verdict.

Before the jurors were accepted as qualified to try the case the attorney for the defendant was permitted to examine each juror. He examined them one at a time. In his examination of the Juror Harry Meadows the following occurred:

"Q. Do you feel that the system of segregation as it previously existed in Colbert County offered any disadvantages to members of the Negro community?

"A. I do.

"Q. Do you feel that there could be resentment among the Negroes in this community to being segregated?

"A. I do.

"Q. Do you feel that such resentment, coupled along with other things of a racial nature, could cause a person to become emotionally unstable?

"A. No, I don't think so. Not to the point of taking a life on account of segregation.

"Q. You don't feel that segregation, coupled with other things of a racial nature, such as a year and a half of being harassed by his White co-workers, and being denied privileges, all of these things. Do you feel that segregation could be a contributing factor to emotional instability of a person?

"A. I don't think so.

"Q. Do you feel that the system of legalized segregation as it existed here created any anxiety or frustration in the minds of Blacks?

"By juror to Mr. Boynton: Would you repeat that?

"Mr. Boynton repeats question:

"Q. Do you feel that legalized segregation as it existed, created any anxiety or frustration in the minds of Blacks?

"A. Apparently, it did.
"Q. But segregation in itself, standing alone, you don't feel would be sufficient to cause any mental problems?

"A. No.

"Q. Let me ask you this. Do you feel that a Black could become an alcoholic as a result of being subjected to segregation?

"A. No, I do not.

"Q. If there were testimony by a competent psychiatrist or sociologist that this

could be true, would you listen to this testimony with an open mind, giving it consideration along with the rest of the evidence?

"A. I would listen to it and consider it along with the other evidence in the case. It would be considered along with all other evidence.

"Q. Then you are saying you could have your mind changed?

"A. Well, I don't think you could change my mind, no. But I would listen and consider it, but I don't think I would consider it to the point that segregation would cause him to be insane enough to take a life.

"Q. What I am trying to find out is on this subject right here. For example, the defense of insanity as a result of segregation. Do you have a fixed opinion, do you have any feeling about that?

"A. Do I have a fixed opinion that segregation had anything to do with it? I have a fixed opinion that I don't think segregation had anything to do with it as far as being denied certain things on the job.

"Q. Then you would say that nothing you would hear after you sit on this jury would change your mind?

"A. I would.

"Q. Have you ever called a member of the Black race a 'Nigger', 'Florida Sunshine' or anything of that nature?

"A. Many times.

"Q. Do you consider the usage of such terms degrading or insulting?

"A. No.

"Q. Do you feel that there are any Blacks who resent being called 'Nigger'?

"A. Well, I don't know. I didn't know there was any other word for it until a few years back.

"Q. How do you spell the word 'Nigger'?

"A. N-i-g-g-a, I guess.

"Q. As far as you know they are not called Negroes?

"A. I didn't call them Negroes or Colored or anything except Nigger.

"Q. What does the word 'Nigger' mean to you?

"A. I don't know. To me it meant a Black person.

"By Mr. Boynton: That's all. You are excused.

"Mr. Boynton to the Court: I wish to challenge Mr. Meadows for cause because of his prejudice.

"BY THE COURT: THE ONLY THING I CAN SEE IS THAT HE STATES HE WOULD NOT ACCEPT SEGREGATION AS A CAUSE OF INSANITY.

"By Mr. Boynton: I feel that he has a closed mind on this.

"By Mr. McCutchen, the District Attorney: The cause of insanity is immaterial.

"By Mr. Boynton: On the basis of the testimony of Mr. Meadows, I move that he be challenged for cause.

"BY THE COURT: YOUR MOTION IS DENIED.

"By Mr. Boynton: We except."

A fair analysis of the juror's statements in answer to the questions propounded to him by the attorney for the defendant is that he expressed the opinion that segregation alone is not sufficient to cause a person to be insane to the extent he should be excused for killing another person. In answer to one of the questions he put it in this way, "No, I don't think so. Not to the point of taking a life on account of segregation."

The appellant complains that the trial court was in error in (1) accepting the verdict of the jury which fixed the punishment of the defendant in these words, "with sentence of life imprisonment;" (2) that the judgment of the court was defective; (3) that the court erroneously instructed the jury as follows, "the law in the trial of a criminal case where a plea of not guilty and a plea of not guilty by reason of insanity are both interposed, the burden of proof on the first plea of not guilty is upon the State, as I have explained to satisfy the jury beyond all reasonable doubt of the defendant's guilt;" and (4) that the court erred in denying the challenge for cause by the defendant of Juryman Harry Meadows. We have stated the substance of appellant's claims of error. We shall now discuss these claims in the order set out.

In the case of Lewis v. State, 51 Ala. 1, the verdict is in these words, "We, the jury, find the defendant guilty of murder in the second degree, and recommend his sentence to the penitentiary for twenty years." The opinion of the court said:

"It is contended for the defendant, that the word 'recommend' does not sufficiently declare the exercise of discretion by the jury in fixing the period of the imprisonment in the penitentiary. It is true that this is not possibly the most apt word that could have been used in such a case. But it certainly fixes the time of the imprisonment with sufficient clearness to enable the court to carry the verdict into effect by its judgment. This is enough. The court will construe the language used in reference to the purpose necessarily intended."

In the case of Durrett v. State, 133 Ala. 119, 32 So. 234, the verdict was, "We, the juror, find the defendant guilty of murder in the first degree, and shall suffer death." That verdict was held by the court to be sufficient. The court there said, "While the verdict was not in proper form, yet it was sufficient to support the judgment of the court."

The verdict in the case before us fixes the punishment of the defendant with sufficient clearness to enable the court to carry the verdict into effect by its judgment. That is all that is required by the law. It is sufficient to support the judgment of the court.

In Elliott v. State, 283 Ala. 67, 214 So. 2d 420, the court recites facts as follows:

"* * * They [the jury] returned a verdict of guilty of murder in the second degree and fixed defendant's punishment at imprisonment in the penitentiary for a period of thirty years. * * *

"There was no formal judgment of guilt or fixation of punishment entered on the minutes of the court, but the bench notes of the trial judge appear in the transcript before us. The verdict was returned in open court, in the presence of the defendant * * *. The trial court, after first asking the defendant if he had anything to say why the sentence should not be pronounced, and receiving no answer, sentenced the defendant to a term of thirty years in the penitentiary * * *."

The opinion of our Supreme Court in that case declared:

"Even though no formal judgment of guilt appears on the minutes, there appears a sentence by the trial court in compliance with the verdict of guilt. It follows that an implied judgment of guilt results, which will support an appeal. * * *"

There are numerous cases which set forth the same principle of law. See Ex parte Roberson, 123 Ala. 103, 26 So. 645; Shirley v. State, 144 Ala. 35, 40 So. 269; and Talbert v. State, 140 Ala. 96, 37 So. 78.

The judgment entry in the case before us has not been attacked on this appeal. It is clearly sufficient. That is the judgment from which this appeal is taken. It is in proper form and legally sufficient.

The defendant complains of the oral pronouncement of the court. If that be considered the judgment of the court, it would meet the requirements of the law. But there was a formal judgment entry which appears in the minutes of the court which is complete in all respects and is legally sufficient.

■ There being no exceptions to the court's oral charge and since neither party submitted special requests in writing for further instructions, the court's oral charge became the law of the case. Consequently, nothing is presented for review. See Jones v. Frye and Anders Equipment Co., 42 Ala.App. 102, 154 So.2d 47 and City Council of Montgomery v. Gilmer & Taylor, 33 Ala. 116.

Was juror, Harry Meadows, subject to challenge? Justice Foster in a very able and learned opinion in Brown v. Woolverton, 219 Ala. 112, 121 So. 404, 64 A.L.R. 640, had this to say:

"* * * 'At common law the grounds for challenge were classified under four heads, as follows: (1) propter honoris respectum; as, if a lord of Parliament be impaneled on a jury, he may be challenged by either party, or he may challenge himself; (2) propter defectum; as if a juryman be an alien born, this is defect of birth; (3) propter affectum, as for suspicion of bias or partiality— this may be either a principal challenge, or to the favor; (4) challenges propter delictum are for some misdemeanor or crime which affects the juror's credit and renders him infamous, as for conviction of treason, felony, perjury, or conspiracy. A challenge propter affectum is of two kinds: a challenge to the favor and for principal cause.' 16 R.C.L. 254. The common-law grounds as far as applicable to our system and not changed by statute remains for our guidance. Our statute has added certain grounds of challenge for cause, but they are not exclusive of the common law remaining unchanged. Section 8610 et seq., Code; Birdsong v. State, supra [47 Ala. 68]; Smith v. State, supra [55 Ala. 1]; Harris v. State, 177 Ala. 17, 59 So. 205; Citizens' L. H. & P. Co. v. Lee, 182 Ala. 561, 62 So. 199; Biggs v. State, 20 Ala. App. 449, 103 So. 706. To justify a challenge for principal cause there must be a statutory ground, or some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court. 16 R.C.L. 255. 'Competency under a statute (or for principal cause at common law) is a question of law, but in other cases is a question of fact, or a mixed question of law and fact, to be determined by the trial court in the exercise of a sound discretion, and its decision will not be interfered with, unless clearly shown to have been abused.' 35 C.J. 312.

"A challenge for favor or bias is to be determined by the trial court as any other question of fact, tried without a jury, and is reviewable on like principles. 35 Corpus Juris, 312, 403, 404; 16 R.C.L. 279, 282, 288; Calhoun v. Hannan, 87 Ala. 277, 6 So. 291; Larkin v. Baty, 111 Ala. 303, 307, 18 So. 666. The decision of the trial court on such question founded on oral evidence is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion. 35 Corpus Juris, 404, 405; 16 R.C.L. 289."

Bouvier's Law Dictionary defines propter affectum, propter defectum, and propter delictum as follows:

Propter affectum: "For or on account of some affection or prejudice. A juryman may be challenged propter affectum; as, because he is related to the party, has eaten at his expense, and the like."

Propter defectum: "On account of some defect. A juryman may be challenged propter defectum; as, that he is a minor, an alien, and the like."

Propter delictum: "For or on account of crime. A juryman may be challenged propter delictum, when he has been convicted of an infamous crime."

 It is true that in addition to grounds for challenge for cause under § 55, Tit. 30, Code of Alabama as recompiled in 1958, common law grounds for challenge still exist when not inconsistent with that statute. Mullis v. State, 258 Ala. 309, 62 So.2d 451. Much of the substance of common law grounds for challenge has been embraced within the statutory grounds for challenge.

▮ The juror, Harry Meadows, was questioned at length as to whether he felt that segregation could cause emotional instability or insanity. There is no requirement in the law of Alabama that a juror must be a doctor, or a psychiatrist, trained to know the causes of insanity or emotional instability, or an expert in the causes of such afflictions in order to serve on a jury where there is a plea of not guilty by reason of insanity. This juror did not say he would not accept insanity as a defense. He said that he would consider all of the evidence. What he did say may have given the defendant cause to strike him as a juror. But there is no statutory or common law ground for challenge which could be used to challenge him.

▮ The question in this case is whether the facts shown prove favor or bias in fact on his part. That was heard and determined by the trial court against appellant on oral evidence. We are not willing to hold that the inference drawn by the trial judge was erroneous. Hence, no ground for challenge was shown. Brown v. Woolverton, supra.

In accordance with Tit. 15, § 389, Code, 1940, we have carefully reviewed the record on this appeal and find no error contained therein.

The judgment appealed from is therefore due to be and is hereby affirmed.

The foregoing opinion was prepared by L. S. Moore, Supernumerary Circuit Judge, and adopted by the Court as its opinion.

Affirmed.