318 So.2d 319

**Willie LEBO**

v.

**STATE.**

**3 Div. 345.**

Court of Criminal Appeals of Alabama.

June 30, 1975.

Rehearing Denied July 29, 1975.

Elno A. Smith, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen. and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

The appellant was charged with the unlawful assault with intent to murder upon one Arthur Glover by hitting him with his fist. The jury found the appellant "guilty of assault and battery," and fixed his fine of $500.00. The trial court, in addition, set sentence at thirty days imprisonment in the county jail as additional punishment. The appellant's motion for new trial was overruled.

Mrs. Mattie J. Glover testified that she was the wife of Arthur Glover, and on December 8, 1973, as she was preparing supper, she saw the lights on the truck at the front gap of a cattle gate, about one-half mile from their home. She also saw another green pick-up truck, which she recognized as belonging to the appellant. She testified that her husband was almost eighty-four years of age, that he was beaten badly about his head and face with a cut over his eye and blood running down his face, and that she took him to Professional Center Hospital where he was treated and remained for slightly over one week. She testified that she notified the Montgomery Sheriff's Department, who investigated.

Dr. George Peters testified that he examined Arthur Glover at Professional Center Hospital on the evening of December 8, 1973, and that he had "facial contusions, contusions of his abdomen, and a laceration of his left eye, which required several stitches," that he remained under his care for approximately one week at Professional Center Hospital.

On redirect examination, Dr. Peters indicated that Mr. Glover had had hardening of the arteries which was a part of damage from a previous heart attack. Photographs made of Mr. Glover at the time he was admitted to the hospital were introduced in evidence.

Mr. Arthur Glover testified that he lived on the Alabama River, about twelve miles from Montgomery, on some land which he purchased in 1935; that this was in Montgomery County about one mile from the Washington Ferry Road. He testified that on December 8, 1973, shortly after 5:00 in the afternoon, he encountered Willie Lebo at the cattle gap, entering onto his premises, and that he had been driving his truck and stopped. He testified that he stopped his pick-up truck and saw the appellant walking toward him. He stated that the appellant did not say a word. From the record:

"Q  What next transpired after he walked up to you?

"A  He walked up to me, and I thought he wanted to talk to me; but he didn't say anything. He walked up and hit me with his fist some two or three times.

"Q  Were you in the truck at that time?

"A  Yes, sir. I was in the truck.

"Q  Did you try to get out of the truck?

"A  No, sir.

"Q  After he hit you two or three times, what next transpired?

"A  I told him I was feeling bad, that I needed to go to the house and go to bed.

"Q  What did he do then?

"A  And before he turned off there, he said that he was going to kill me. He was up on top of me hitting me, and he said, 'I'm going to kill you.'

"Q  All right sir. Where did he strike you? Show this jury and this Court where he struck you.

"A  Well, I can't tell you all the places he hit me. It was on the shoulder and on my face here and on my sides. He must have hit some 8 or 10 times. I don't know just how many.

"Q  Now, did he take his hand and open it up and slap you with it, Judge?

"A  No. He just hit me with his fist.

"Q  Did he ball up his fist and hit you with it?

"A  Yeah, that's right."

Mr. Glover stated that Willie Lebo hit him eight or ten times about his face and stomach. He admitted on cross-examination that the two of them had had words before over some cattle getting on each other's property. He testified that his wife carried him to Professional Center Hospital that evening, and he remained there for one week.

Bobby Milstead testified that he was employed as a deputy sheriff for Montgomery County on December 8, 1973. He testifed that in response to a sheriff's radio call, he went to the home of Arthur Glover, a short distance off Washington Ferry Road on the late afternoon of December 8, 1972. He stated he saw the truck there near the cattle gap, which belonged to the appellant, that he spoke to Mr. and Mrs. Arthur Glover and saw that Mr. Glover was badly beaten, that Mrs. Glover was taking him to the hospital. He testified that he next saw the appellant about 8:00 that same evening at the Montgomery County Jail, that he was present when some photographs were taken of the appellant, that appellant's hands were swollen and bloody, and there was blood on appellant's shirt sleeve.

W. M. Pilgreen testified that he was a deputy sheriff for Montgomery County on December 8, 1973. He testified that he went to the home of Arthur Glover, that at a cattle gap leading onto the property he observed the appellant, Willie Lebo, and that he appeared to have blood on his hands. He testified that later that evening some photographs were made of the appellant at the Sheriff's Office after appellant was first advised of his *Miranda* rights. He testified that the appellant made no statement to him.

The appellant's motion to exclude the State's evidence was overruled.

The appellant first sought to present the testimony of one Elmer McGuire, who lived near Hunter Station in the Western part of Montgomery County, and who was a neighbor of both the appellant and Arthur Glover. Through this witness, the appellant sought to present the testimony that Arthur Glover was mean and quarrelsome. This testimony was first admitted by the trial court, and then subsequently the jury was directed to ignore it and to strike this testimony from their consideration.

The appellant, Willie Lebo, testified that he was fifty-four years of age and lived on the Washington Ferry Road about 2.8 miles from the cattle gap leading to the premises of Arthur Glover. He stated that he was retired from the United States Air Force and that he leased some land adjoining the Glover's property that was used for fishing.

He testified that on the late afternoon of December 8, 1973, he saw Mr. Glover near a cattle gap, that he stopped his pickup truck and tried to talk with Mr. Glover about leaving the cattle gap open, and the two men started arguing after he stated that he did not want the "Glover's cows coming out on my land."

He stated that Mr. Glover actually walked into him, bumping him, that he then threw up his hand and slapped Mr. Glover, that as Mr. Glover was arguing with him he slapped him three or four times with an open hand, and that he then saw Mr. Glover turn and go to get in his pick-up truck. He denied ever hitting Mr. Glover with his fist.

He testified that about thirty minutes after Mr. Glover departed, he saw someone drive near his pickup truck, that he heard a sound like a shotgun, and later observed what he thought to be three pellet marks on his windshield. The appellant stated that he made a complaint to the sheriff's deputy that evening about this incident and stated that he and Glover had had words before about the cattle coming through the cattle gap onto his property.

On cross-examination, appellant stated that he did not know that Mr. Glover had a heart condition or hardening of the arteries, and that he did not say that he was going to kill him.

The appellant also presented a number of neighbors, who testified as to his good character and reputation in the community where he lived.

The State recalled Bobby Milstead, a deputy sheriff, who testified that he observed the appellant's vehicle on the night of December 8, 1973, and that he saw no evidence of any bullet holes or shotgun pellet holes in the windshield at that time.

Arthur Glover was recalled and testified that he had lost two teeth as a result of being struck by the appellant on the night of December 8, 1973.

The appellant called his wife, Dora Lebo, in rebuttal. She testified that prior to leaving their home on the later afternoon of December 8, 1973, there were no pit marks on the windshield of their truck, but that she later saw some when her husband showed them to her the next morning.

I

The appellant first contends that the State should not have been allowed to ask questions of his character witness, Elmer McGuire, on cross-examination as to the specific conduct, or acts, of the victim, Mr. Glover.

We have examined this incident and find that, in light of the negative answers, which were given by the witness, such questions were thereby rendered harmless. *Robinson v. State,* 44 Ala.App. 206, 205 So.2d 524; *Peyton v. State,* 40 Ala.App. 556, 120 So.2d 415, cert. denied 270 Ala. 740, 120 So.2d 429; *Ellis v. State,* 39 Ala. App. 325, 100 So.2d 725, cert. denied 267 Ala. 235, 100 So.2d 732.

■ We have also examined the ruling of the trial court wherein the jury was instructed that, in light of its own questioning of the appellant, himself, it was inappropriate under the circumstances of this case for the appellant to invoke the doctrine of self-defense (R. pp. 84–85). Therefore, any evidence as to Mr. Arthur Glover's reputation for peace and quiet should be disregarded. This is correct under the evidence. *Lawson v. State,* 155 Ala. 44, 46 So. 259; McElroy's Law of Evidence of Alabama, Volume I, Section 33.01(2).

## II

■■ After the jury brought in its verdict (R. p. 115), the trial court then made the following inquiry of the District Attorney before imposing an additional thirty days imprisonment as punishment:

"(JURY EXCUSED)

"THE COURT: The fine was $500. There is a question in my mind as to whether any time ought to be added to it since it was such a severe beating and uncalled for and unprovoked, and there was no excuse for it whatsoever. What did you-all offer him?

"MR. EVANS: From assault and battery to 30 days, Judge.

"MR. SMITH: Your Honor, the fine ought to be adequate.

"THE COURT: The whole thing is, a man was beaten very severely, and there wasn't any excuse for it.

"MR. SMITH: Yes, sir.

"THE COURT: I don't think it was murder. Of course, he could have murdered him if he wanted to; and it was just by the grace of God he didn't have a heart attack while he was beating on him. I don't know what the cost would be. I'll put blank number of days for cost.

"MR. SMITH: Yes, sir.

"THE COURT: Are you going to pay the fine now?

"MR. SMITH: Yes, sir.

"THE COURT: Do you have anything to say why the sentence of law should not now be imposed upon you?

"THE DEFENDANT: No, sir.

"THE COURT: Upon the jury's verdict of guilty of assault and battery and affixing a fine of $500, the Defendant is found guilty of assault and battery and fined $500 plus blank number of days for the cost. In addition thereto, I sentence you to 30 days in the County Jail."

We see no error in the court making this inquiry as to the District Attorney's recommendation since this is a proper and rightful function of the District Attorney in the exercise of his authority. *Ex parte State ex rel. Bailes,* 235 Ala. 133, 177 So. 752. Moreover, such is not binding upon the trial court, but is a proper function of the District Attorney in advising the court as to his opinion of the disposition of the cause. In light of this, we see no error in the trial court's obtaining this information before setting sentence in this cause. *Ex parte State,* supra; and *Mullis v. State,* 258 Ala. 309, 62 So.2d 451, and cases cited therein. Title 14, Section 33, Code of Alabama 1940.

## III

■ Finally, the appellant asserts as error the failure of the trial court to give certain written requested charges, and asserts as error the failure of the trial court to make a proper oral charge.

From the record:

"THE COURT: . . . State satisfied?

"MR. EVANS: Yes, sir, Your Honor.

"THE COURT: Defendant satisfied?

"MR. SMITH: We are satisfied with the Court's oral charge. We would like to know whether or not the Court is going to give the written charges?

"THE COURT: The written charges were included in the oral charges.

"MR. SMITH: Well, we respectfully except for the record.

"THE COURT: I read them out when I was giving the oral charge, and that covers it so they don't have to be burdened down with a lot of papers.

"MR. SMITH: Okay, sir.

"THE COURT: So you all will retire, ladies and gentlemen, and bring back a verdict.

(JURY RETIRES TO JURY ROOM)"

The exception as reserved above is not sufficient to invoke our review of the oral charge. As observed by Judge DeCarlo, speaking for a unanimous court, in *Garner v. State,* 53 Ala.App. 209, 298 So.2d 630, cert. denied 292 Ala. 721, 298 So.2d 633:

". . . [W]e are compelled to follow that rule announced in innumerable decisions of our appellate courts that, in order to put the court in error upon its oral charge, the reserved exception must designate and set out the particular part of the charge to which the exception is directed. *Brock v. State,* 28 Ala.App. 52, 178 So. 547; *Robinson v. State,* 38 Ala. App. 315, 82 So.2d 815; *Wilcutt v. State,* 41 Ala.App. 25, 123 So.2d 193."

As to the written requested charges, we have examined each of these, and find that they were either covered by the trial court's oral charge, or were abstract, or were affirmative in nature under the evidence in this case, or incorrect principles of law, hence, their refusals were proper.

Title 7, Section 273, Code of Alabama 1940; *Cannon v. State,* 53 Ala.App. 509, 301 So.2d 272, and authorities therein cited.

We have carefully examined this record and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.