The appellant was convicted of assault in the second degree for the beating of a seventeen month old child. The trial court fixed his punishment at eight years in the state penitentiary.
The State's evidence in this case is largely circumstantial. There were no eyewitnesses to the assault which resulted in the injuries to the child in question. Briefly, the State's evidence proved that Ms. Shiela Freeman and the appellant lived together from August through November of 1980. Ms. Freeman worked at a restaurant and during work hours she often left her two children, a two year old girl and the seventeen month old victim, Bobby Earl, in the appellant's care.
Approximately a month and a half after Ms. Freeman had lived with the appellant she began to notice injuries to Bobby Earl; the injuries would occur when Bobby Earl was left with the appellant. On different occasions Ms. Freeman noticed scratches on Bobby Earl's head and stomach, bruises on his knees with one knee more swollen than the other and bruises on the child's head and around his eyes. When Ms. Freeman confronted the appellant about these injuries appellant denied scratching Bobby Earl. He also told her he didn't know how the child's knees became bruised other than "he was crawling." (R. 19) Appellant's explanation for the bruises around Bobby Earl's eyes and to his head was that "he fell out of the chair." Ms. Freeman described the chair from which Bobby Earl allegedly fell as being "not too high," a regular "sofa" chair with "fur type stuff on it." (R. 20)
Later, in October, Ms. Freeman discovered a burn on Bobby Earl's buttocks after the child had been left with the appellant. Appellant explained that the burn had occurred when Bobby Earl "fell on the ash tray;" however, appellant was unable to produce any burned clothing the child should have been wearing.
Then, on November 22, 1980, a Saturday, Ms. Freeman again left her children in appellant's care while she went to work. When she returned that night appellant was not there but the children were in bed asleep. The next morning Ms. Freeman discovered that both of Bobby Earl's eyes were blacked, his head was badly bruised and there was a large knot on his forehead. When Ms. Freeman confronted appellant about this episode, he again could offer no explanation for the injuries.
On Tuesday, November 25, 1980, Mrs. Kathy Brooks, a social worker with the Dale County Department of Pensions and Security, came by to see Ms. Freeman and then went with her to take Bobby Earl to the hospital. Mrs. Brooks described Bobby Earl's injuries as follows:
 "[H]e had two very dark eyes that looked like black eyes, and he had a large knot in the middle of his forehead. His leg was a little swollen. He had bruises on the right side of his face, and we took the child's diaper off and there was a large circular pink area on one of his buttocks that had what looked like to be a scab forming right in the middle of it, a raw area." (R. 39-40)
Photographs taken at the hospital verify Mrs. Brooks description of Bobby Earl's condition in all details. Mrs. Brooks stated that based on her investigation of the incident a warrant was sworn against the appellant.
Ms. Freeman further testified that she received a letter from appellant while he was in jail. Appellant told her that certain individuals from Montgomery had visited his cell inquiring about "the kids" and that he had given them a "phony stand (sic)." Appellant wanted her to "leave Ozark for a little while until this blows over." (R. 26)
The appellant's motion to exclude the State's evidence was denied. Evidence presented by the defense was in certain respects conflicting with the State's case.
 I
The appellant contends that the circumstantial evidence presented by the State was insufficient to support his conviction. We disagree. This court is required to view the evidence in the light most favorable to *Page 404 
the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975), and not substitute its judgment for that of the jury. Cumbo v.State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the State's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. Young v. State, 283 Ala. 676,220 So.2d 843 (1969).
Circumstantial evidence is not inferior evidence, Thomas v.State, 363 So.2d 1020 (Ala.Cr.App. 1978), and will support a conviction as strongly as direct evidence provided it points to the guilt of the accused. Kelsoe v. State, 356 So.2d 735
(Ala.Cr.App. 1978). While mere speculation, conjecture, or surmise, will not authorize a conviction, the jury is under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw. Kontos v. State,363 So.2d 1025, 1034 (Ala.Cr.App. 1978).
Our Supreme Court in Dolvin v. State, 391 So.2d 133, 137, 138
(Ala. 1980) adopted the standards set out in Cumbo, supra, for testing the sufficiency of circumstantial evidence which we find controlling here:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130
(5th Cir. 1971); Clark v. United States, 293 F.2d 445
(5th Cir. 1961).
 "(W)e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words, * * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude. Williamson v. United States, 5th Cir. 1966, 365 F.2d 12, 14. (Emphasis supplied.)
 "The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.
 "See also Blair v. State, 18 Ala. App. 615, 93 So. 45
(1922). Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court. Cannon v. State, 17 Ala. App. 82, 81 So. 860 (1919); see also Evans v. State, 39 Ala. App. 404, 408, 103 So.2d 40, cert. denied, 267 Ala. 695, 103 So.2d 44 (1958)."
See also Hayes v. State, 395 So.2d 127 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981). *Page 405 
As was stated in Hayes, supra: "Guilt need not be proven to the `exclusion of every possibility of innocence' to warrant a conviction. . . . The State's evidence should not be stricken out, merely because, when disconnected it is weak and inconclusive, if, when combined, it may be sufficient to satisfy the jury of an accused's guilt." 395 So.2d, at 147. Applying the foregoing principles of law to the facts in this case, we hold that the evidence was sufficient to sustain the jury's verdict.
 II
The appellant also maintains that the State failed to prove the necessary elements to establish a prima facie case of assault in the second degree under any of the alternative categories listed under Ala. Code § 13A-6-21 (Supp. 1977). We, again, disagree with appellant's contention.
For the purpose of this appeal we need only consider Section13A-6-21 (a)(2) which reads in pertinent part:
 "A person commits the crime of assault in the second degree if: With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument."
Ala. Code § 13A-1-2 (11) and (12) (Supp. 1979) define "deadly weapon" and "dangerous instrument" as follows:
 "DEADLY WEAPON. A firearm or anything manifestly designed, made or adopted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles.
 "DANGEROUS INSTRUMENT. Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury, and such term includes a "vehicle," as that term is defined in subdivision (13) of this section." (Emphasis added).
Appellant contends that there was no evidence of the use of a deadly weapon or dangerous instrument to inflict the injuries on the child. However, the jury could easily infer from the evidence that the appellant used his fists or some other object to beat Bobby Earl. The photographs taken at the hospital, alone, bear this out.
Long before the adoption of the new criminal code on January 1, 1980, Alabama subscribed to the view that it was the use of the weapon or instrument, and not solely its nature, that determined whether or not it was esteemed deadly. Helton v.State, 372 So.2d 390 (Ala.Cr.App. 1979) and cases cited therein. This emphasis on "use" under the circumstances had been codified in Section 13A-1-2 (12). Moreover, there is no limitation expressed in § 13A-1-2 (11) which would prevent human fists from being considered a "deadly weapon" under appropriate circumstances. Lebo v. State, 55 Ala. App. 624,318 So.2d 319, cert. denied 294 Ala. 763, 318 So.2d 334 (1975);Thomas v. State, 229 S.E.2d 458, 460, 237 Ga. 690, 88 A.L.R.3d 1172 (1976); State v. Clark, 214 Kan. 293, 521 P.2d 298, 300
(1974).
In Helton, supra, this court held that: "while feet or shoes are not deadly weapons per se, the manner of their use in particular situations may make them deadly weapons." 372 So.2d, at 393. By analogy, we think the same principles apply here to appellant's fists. Certainly the use of an adult man's fists to beat a seventeen month child may appropriately allow those fists to be classified as a deadly weapon or a dangerous instrument. Therefore, the State's evidence supported the jury verdict under Section 13A-6-21 (a)(2).
 III
The appellant's final allegation is that the trial court erroneously refused to strike certain prospective jurors he challenged for cause. Appellant contends those jurors were biased and inflamed against him and should have been struck. We find no merit to this argument. *Page 406 
For the sake of clarity we here set out the pertinent part of the record in which the prospective jurors were questioned.
 "MR. McCABE: Ladies and gentlemen, this case involves the alleged beating of a very small child, seventeen months. Would that fact in and of itself cause you any bias one way or another in this case? Would that inflame you or make you in any way biased against this Defendant?" (R. 7)
Eleven prospective jurors responded affirmatively.
Assistant District Attorney William B. Matthews then countered with the following questions:
 "MR. MATTHEWS: May it please the Court, ladies and gentlemen of the jury, this last question he asked you, are there any of you who answered who could not give this man a fair trial in your own minds, regardless of the fact that it involves a small child?
"JURORS: (No response)
 "MR. MATTHEWS: What I mean is, can you take the evidence that comes from the stand, and give him all the rights that he is entitled to, and waive (sic) the evidence and make a determination based on the evidence? That's all that we are asking. Is there anybody that can't do that?
"JURORS: (No response)" (R. 8)
Later, defense counsel attempted to strike the eleven prospective jurors in question when the following exchange occurred:
 "MR. McCABE: Your Honor, I believe we are entitled to strike these people who stated that they would automatically be biased against the Defendant.
 "THE COURT: I don't think that's what they were saying. They were saying that they didn't like that, because nobody likes that.
 "MR. MATTHEWS: I purposely asked them could they give the man a fair trial, and they —
 "THE COURT: That's all you're entitled to. Have you got a list of their names?
"MR. McCABE: I have, your honor.
 "THE COURT: Just have a seat. Those of you who answered the question as to whether or not the fact that this case is concerned with the alleged beating of a seventeen month old child, whether or not that would inflame you or prejudice you, if you answered that question yes, I would appreciate it if all of you that answered it would just come up here and stand in front of the bench so I can ask you a couple of questions. When Mr. McCabe asked you that question, if you raised your hand.
"(Whereupon, jurors coming forward at this time.)
 "THE COURT: It was stated by Mr. McCabe in his questions to the jurors that this case may involve the beating of a small child. The question is whether or not — regardless of whether or not the case involves a beating of a small child, whether or not you can put that out of your mind and hear the evidence as it comes from the witness stand, and the law as the Court gives it to you, and based on the evidence and the law in the case, render an impartial verdict in deciding whether or not the Defendant is guilty of what he is charged of. In other words, just merely because a small child has been beaten, would that so inflame you that you could not weigh the evidence, hear the evidence, apply the law to the facts, and render an impartial verdict according to the facts of the case? In other words, the State has the burden of proving the Defendant guilty beyond a reasonable doubt by the evidence from the witness stand. Could you put the fact that maybe a small child is involved, out of your mind, in determining whether or not the State has proven their case? That's really what the test is. Of course, it makes anybody mad and inflamed if a small child is beaten, but the question is whether or not you could put that out of your mind and give Oree Stewart a fair trial; that is, listen to the evidence, the law as the Court gives it to you, apply the law to the facts, and decide whether or not the defendant is guilty or not. Is there anyone that feels that just because *Page 407 
a small child is involved that you could not give the Defendant a fair trial." (R. 9-11)
Seven prospective jurors of the original eleven to whom the question was addressed answered the trial judge that they would be unable to give appellant a fair trial. Those seven were struck for cause, but the remaining four, who did not respond affirmatively to the trial court's question, were not struck for cause from the venire. This was not error.
Ala. Code § 12-16-150 (1975) provides a statutory list of grounds for which a juror may be challenged for cause by either party. Contained within that list is § 12-16-150 (7), relied upon by appellant, which states that a challenge for cause lies where a juror "has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict." In addition to the grounds for challenge for cause under § 12-16-150, grounds for challenge for cause under the common law still exist, when not inconsistent with the section. Mullis v. State, 258 Ala. 309, 62 So.2d 451 (1952); Felton v. State, 46 Ala. App. 579,246 So.2d 467 (1971).
It is evident that the jurors appellant challenged for cause did not have a "fixed opinion" as to his guilt or innocence. A "fixed opinion" which will bias a verdict is one that is a conviction or prejudgment, a strong or deep impression which closes the mind of a juror and combats the testimony and resists its force. Fuller v. State, 269 Ala. 312,113 So.2d 153, 161 (1959), cert. denied, 361 U.S. 936, 80 S.Ct. 380,4 L.Ed.2d 358 (1960); Nobis v. State, 401 So.2d 191
(Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala. 1981). InPeterson v. State, 227 Ala. 361, 150 So. 156, 159 (1933), cert. denied, 291 U.S. 661, 54 S.Ct. 439, 78 L.Ed. 1053 (1934), our Supreme Court said:
 "What is said in Long v. State, 86 Ala. 36, 5 So. 443, 447, finds application here:
 "`While some of the expressions in the opinion may not be sufficiently limited or qualified for use as general definition, the following may be deduced from the cases, when compared with each other, as expressing the meaning of a fixed opinion which would bias the verdict. The mere formation of an opinion, founded on rumor or hearsay, which is subject to change on hearing the evidence, and leaves the mind of the juror free to impartially consider the whole evidence, without giving undue credence to that which tends to prove the facts as heard, and to apply to the evidence the law as pronounced by the court, is not sufficient to disqualify. But an opinion, whether founded on rumor or conversations with witnesses, or on observation, which is a conviction, a prejudgment, disqualifying the juror to impartially consider the whole evidence, — that which tends to prove the facts as heard, as well as that which contradicts or explains, — and to apply free from bias the law as given in charge by the court, is a fixed opinion which will bias the verdict. The mind of the juror should be in such a state of freedom, that he is capable of giving to the accused the weight of the presumption of innocence, and the benefit of a reasonable doubt. The statute affirms, in concise, intelligible, and comprehensive language, the common-law rule, as declared by Chief Justice Marshall in Burr's trial. "That light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him."
 "`The sufficiency of the cause of challenge is determined by the trial court, and the inquiries are addressed to the conscience of the juror under oath. He is examined touching his qualifications, in the presence of the judge, who sees his manner of answering the questions, and the probing of his conscience, which is often times more clearly indicative of his disinterestedness or bias, than the mere *Page 408 
words used. The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror, taken as a whole, he entertained a fixed opinion which would bias his verdict.'" (Emphasis added.)
Moreover, as was stated by this court in Tidmore v. City ofBirmingham, 356 So.2d 231, 234 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala. 1978): "[t]o disqualify a prospective juror, he must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused. Suchopinion must be so fixed as that it would bias the verdict a juror would be required to render." (Emphasis added.)
Since the four prospective jurors, who were allowed to remain on the jury venire, did not exhibit a fixed opinion as to the guilt or innocence of appellant which would bias their verdict, appellant's ground for challenge must rest on common law.Thomas v. State, 373 So.2d 1167, 1169 (Ala. 1979); Nobis, supra. When a common law ground is at issue there must be a showing of absolute bias leaving nothing to the discretion of the trial court, or there must be a mixed question of law and fact to be determined by the trial court exercising its sound discretion. Thomas, supra; Mullis v. State, 258 Ala. 309,62 So.2d 451 (1952). We find that this case presents a matter within the discretion of the trial court. A trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Price v. State,383 So.2d 884 (Ala.Cr.App.), cert. denied, 383 So.2d 888 (Ala. 1980);Motes v. State, 356 So.2d 712 (Ala.Cr.App.), cert. denied,356 So.2d 720 (Ala. 1978). Appellant's allegations fall far short of proving absolute bias and there can be no contention that the juror's responses constituted probable prejudice as defined in Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961), and cases cited therein.
Based on the foregoing principles, we hold that the trial court properly exercised its discretion in overruling appellant's challenges for cause.
We have considered each issue raised by appellant. In addition, we have searched the record, as required by law, for errors prejudicial to appellant's substantial rights and have found none. The Circuit Court's judgment of conviction is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.