HARRIS, Judge.
Rufus Kimble was indicted for first-degree robbery and convicted of second-degree robbery for his participation on May 5, 1982, in the robbery of George Mac Gordon in rural Lee County, Alabama. Pursuant to Alabama’s Habitual Felony Offender Act, Kimble, the appellant, was sentenced to life imprisonment.
The sole issue on appeal is appellant’s challenge that the evidence was insufficient to connect him with the crime.
At 11:00 a.m. on May 5, 1982, seventy-nine-year-old George Mac Gordon bought groceries at the local Piggly Wiggly supermarket. To pay for the groceries he used his Civil Service paycheck. He received $258 in change and placed the money in a brown envelope, which he placed in his breast pocket.
Mr. Gordon then drove home, a distance of three to four miles from the Piggly Wiggly supermarket, and began unloading his groceries.
As he was returning to his automobile to unload more groceries he noticed, about fifty feet up the street, two black males, who were talking with each other as they walked toward him. As one of the men walked past him, Gordon spoke to him. The man did not reply, but instead nodded a couple of times, as though he were giving a signal to the other man, and kept walking. Before Gordon could turn around the second man stuck the barrel of a pistol against Gordon’s ribs and requested that Gordon accompany him inside Gordon’s home. Instead, because he knew his wife and mother-in-law, both of whom were invalids, were inside his home, Gordon grabbed for his assailant’s gun. Without hesitating, the gunman grabbed the brown envelope from Gordon’s breast pocket, and *430 ran away. The gunman did not attempt to take Gordon’s wallet and he made no effort to search Gordon for other valuables.
Gordon quickly retrieved his shotgun. As he returned to the street the first man, the one who had walked down the street in the opposite direction from the gunman, appeared again. As he approached, Gordon confronted him with his shotgun and requested that he stay with Gordon until the police arrived. The man explained that he was looking for someone named Johnson, but there was no Johnson in that neighborhood. Then, ignoring appellant’s request to stop, the man ran across the street, through Elmer Shehane’s yard, jumped Shehane’s back fence, and disappeared.
Several neighbors, including Shehane and Cleatus Otis Taylor, assisted Gordon in the chase of, and search for, the two robbers. Both men were apprehended within minutes of the robbery.
Gordon identified the appellant as the first man, the apparent decoy or look-out in the robbery. Gordon identified the appellant at the scene and at trial, although his in-court identification was less than positive because of appellant’s change in appearance between the day of the robbery and the day of the trial. Shehane, however, positively identified the appellant, at trial, as the man he saw on the day of the robbery running from Gordon and through his lot. Furthermore, Cleatus Taylor and Deputy Henry Johnson of the Lee County Sheriff’s Department identified the appellant at trial as the man that Gordon positively identified on the day of the robbery.
Deputy Johnson testified that, after he had given the appellant his Miranda warnings, the appellant said “I came to Alabama and screwed up.”
The gunman, the second man in the robbery, was later identified as Ronald Calvin McHarris. McHarris was seen by Sharon Jones just outside the Piggly Wiggly supermarket at about the time Gordon left with his groceries. A few minutes after the robbery McHarris was captured near his automobile, which had been parked on a dirt road about 150 yards from Gordon’s home. A pistol was recovered from McHarris’ automobile.
Gordon recovered his $258 from the police, who had taken the cash from both the appellant and McHarris after the robbery.
McHarris, who had already been convicted for his participation in the robbery, was called as a witness for the prosecution, but he invoked his Fifth Amendment right to remain silent and did not testify.
The appellant testified in his own behalf. He did not contradict Gordon’s version of the robbery. He admitted that he was chased, captured, and arrested in the vicinity of the robbery, but denied that he was the man with McHarris who helped rob Gordon. He explained that he did not know, and had never seen, McHarris before the robbery. He saw McHarris for the first time during the preliminary proceedings connected with his trial. He further explained that on the day of the robbery he was walking on “Highway 12” from Opeli-ka, Alabama, to Columbus, Georgia. He heard the commotion created by the robbery, including gunshots, and thought he was being “shot at.” He ducked into some bushes by a house down a dirt road for safety. When someone spotted him, he ran. He did not know a robbery had taken place. He thought he was being chased for trespassing on private property. He eventually surrendered at gunpoint, but only because he thought he would be accused of trespassing.
The appellant admitted making the statement to Deputy Johnson about “screwing up” in Alabama but insisted that he was referring to his unfortunate luck of being in the vicinity of the robbery and not to any participation in the robbery. He admitted that he was carrying a lot of cash, but explained that his friends and relatives had given him the money to help keep him out of jail. He admitted that he had been arrested and convicted of several other crimes and that he had actually traveled to Opelika to avoid the Columbus, Georgia, *431 authorities, who were continuously har-rassing him for no reason.
Before the appellant gave his alibi testimony, he moved, in effect, for a judgment of acquittal claiming that the state’s evidence was insufficient to prove his participation in the robbery. The trial court denied this motion.
Although the identification of the appellant at trial by the victim, Gordon, was less than positive, and there was no evidence that the appellant actually took Gordon’s money, the evidence was, nevertheless, sufficient for the jury to infer appellant’s participation in the robbery.
“While mere speculation, conjecture, or surmise, will not authorize a conviction, the jury is under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw. Kontos v. State, 363 So.2d 1025, 1034 (Ala.Cr.App.1978).”
Stewart v. State, 405 So.2d 402 (Ala.Cr. App.1981). A permissible inference from the evidence in this case was that the appellant conspired with McHarris immediately before the robbery and participated therein as either a decoy or a look-out.
There was no direct evidence of this conspiracy. However, “participation and community of purpose may be shown by circumstantial evidence or inferred from the conduct of the participants.” (Emphasis added.) Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). And a person’s presence and his conduct before, during, and after the crime, are “potent circumstances from which participation may be inferred.” Sanders v. State, supra.
The state’s evidence, when viewed pursuant to Dolvin v. State, 391 So.2d 133 (Ala. 1980), reversing, 391 So.2d 129 (Ala.Cr. App.1979), and cases therein cited, in the light most favorable to the prosecution, showed that the appellant was conversing with McHarris immediately before the robbery, that he distracted Gordon and then signaled McHarris as McHarris stepped up behind Gordon and threatened him with a pistol, and that he eventually fled when Gordon requested that he stay until the police arrived. The state’s evidence further indicated that after his arrest the appellant said “I came to Alabama and screwed up,” and that a large amount of cash was recovered from him.
This evidence was sufficient to present to the jury the question of whether or not the appellant was, indeed, an accomplice in the robbery. The trial court, therefore, did not err in denying appellant’s motion for judgment of acquittal. See, Sanders v. State, supra; see also, Reed v. State, 55 Ala.App. 138, 313 So.2d 564 (1975); Glover v. State, 382 So.2d 645 (Ala.Cr.App.1980).
Furthermore, although the appellant testified that he was not the unarmed man who, allegedly, participated in the robbery, the evidence was sufficient to support the jury’s verdict to the contrary.[1] We will not substitute our judgment for that of the jury. Cumbo v. State, 368 So.2d 871 (Ala. Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979); Dolvin v. State, supra; Stewart v. State, supra.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.

. The evidence presented herein distinguishes this case from Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978), Lollar v. State, 398 So.2d 400 (Ala.Cr.App.1981), and other cases cited by the appellant as examples of instances where convictions based on mere speculation, suspicion, or conjecture were, necessarily, reversed.