177 So. 752

**Ex parte STATE ex rel. BAILES.**

**6 Div. 228.**

Supreme Court of Alabama.

Dec. 18, 1937.

Crampton Harris, of Birmingham, for petitioner.

Erle Pettus and Erle Pettus, Jr., both of Birmingham, for respondent.

GARDNER, Justice.

Petitioner is solicitor and respondent one of the circuit judges for Jefferson county, and by this proceeding a review is here sought of a citation for contempt issued by the judge to the solicitor.

It is not pretended that any conduct of the solicitor in the presence of the court

was in the least objectionable, and no "direct contempt," as so defined in the cases, 13 Corpus Juris, 5, and as considered in Ex parte Wheeler, 231 Ala. 356, 165 So. 74, is here involved. If any at all, it is a constructive contempt, and the point is taken that citation was issued without supporting affidavit, citing Craddock v. Oliver, 23 Ala.App. 183, 123 So. 87, certiorari denied, 219 Ala. 607, 123 So. 88; Robertson v. State, 20 Ala.App. 514, 104 So. 561; Ex parte Duncan, 78 Tex.Cr.R. 447, 182 S.W. 313, 2 A.L.R. 225. But we pass that question by without determination, as we prefer to rest the decision upon broader grounds involving the merits of the case.

The matter in controversy arose over the disposition of some criminal cases for the week of October 12, 1937, at which time three of the judges of that circuit (Smith (J. Q.), McElroy, and Wheeler) were engaged in that character of work. Each week one of the judges sounds the docket of all the criminal cases and sends them out for trial to the other two, and assigns others to himself. This particular week Judge Smith was sounding the docket and assigning the cases. Three cases involving charges of robbery against Johnie Palmer were sent by him to Judge Wheeler's court, and the trial sheet so forwarded. The solicitor, in company with the attorney for defendant, appeared in respondent's courtroom, and being asked by respondent what he had, informed him of the three charges against Palmer, and stated that he had an agreement with defendant's counsel for a plea of guilty and a recommendation of ten years' imprisonment in each case. Respondent was opposed to any recommendation as to the punishment and stated he would accept no such recommendation.

As we read the record, with particular reference to respondent's answer, he was impressed that no such recommendation could be made by the solicitor to the jury without the court's consent. We think this a misconception of the powers and duties of the solicitor. He is the chief prosecuting officer for that county, and is presumably familiar with the facts and in closer touch with the witnesses and all attendant circumstances. Presumably he is in the conscientious discharge of his duty, and such officers have long been accustomed to making such recommendations in criminal cases to facilitate business of the court, and for more prompt infliction of punishment. The authorities cited in the notes to 18 Corpus Juris, § 42, p. 1314, suffice to demonstrate the authority of the solicitor to make such a recommendation as he then proposed.

After all, it is but a recommendation which the jury may accept or reject, and having been made, it is within the province of the presiding judge to instruct the jury that it is a recommendation only, and that the duty rests upon them to fix the punishment. But the solicitor, in the proper discharge of the duties of his office, has the right to so recommend. It inheres in his office, and in the rightful exercise of this authority, he is not subject to control.

By reason of physical infirmity at the time, defendant's counsel was not ready to try the case, and an order was entered on the trial sheet passing the case to the fourteenth, and nothing more. Respondent understood the cases would be tried before him on that date. The trial sheet, however, was sent by the clerk back to Judge Smith, and it appears undisputedly before he made another assignment to Judge McElroy, he was fully informed of the occurrence in Judge Wheeler's court. It is not insisted, as we understand the argument, that Judge Smith did not lawfully get back the trial sheet and make the other assignment, and that the case, as a matter of law, was rightfully tried in Judge McElroy's court, where the cases were submitted to a jury and verdicts rendered in accord with the recommendation of the solicitor. Undisputedly also, Judge McElroy was informed of what occurred in respondent's courtroom, and that before the recommendation was made the solicitor interviewed the victims of the robbery, and obtained their approval thereof.

Respondent, anticipating a return of that particular trial sheet to his courtroom on the fourteenth, and discovering a reassignment and disposal in another, assumed his jurisdiction had been avoided without information being given to Judge Smith and Judge McElroy, and his citation so discloses.

But such was, undisputedly, not the case. True, the cases had been reassigned, the suggestion to that effect coming first from petitioner's assistant, but readily acquiesced in by petitioner for the reason that it would avoid all embarrassment and any conflict between the solicitor and the judge. Perhaps it was natural that respondent should have come to the conclu-

sion that some disrespect was intended, and it is quite evident respondent was acting throughout in the conscientous discharge of his duties as judge as he saw it. But it is clear enough the solicitor intended no affront to the judge. He was in fact avoiding any conflict of views in regard to his duties and those of the presiding judge.

Consider for a moment the solicitor's position. He was convinced the pleas of guilty in the three cases with a minimum penalty of ten years in each, a combined thirty years' imprisonment, was to the public interest. He had so agreed with defendant's counsel, and such agreement openly announced. His word was given, and he felt honor bound to the observance of the agreement. It appeared evident that respondent entertained the view that the solicitor could make no such recommendation without the court's consent. A reassignment of the case to another judge would obviate any such conflict of views. Respondent had made no order save on the trial sheet passing the case to the fourteenth, and this trial sheet was returned to Judge Smith. The circuit court of Jefferson county is one court, though a number of judges are provided to dispatch the business of the court. Judge Smith, in making the reassignment was representing the court, and that Judge McElroy legally entered into the trial is not questioned. The solicitor, therefore, pursued a lawful course, and thus in a legal manner carried out his agreement with defendant's counsel. At the same time he conceived the idea he was avoiding an unpleasant conflict of views with respondent judge. It is evident he intended no disrespect to the judge, nor did he violate any order entered by him in the matter.

We have stated our views that the solicitor had the legal right to make the recommendation. And in doing what he did, he was in the exercise of a lawful right.

▅ Respondent's citation discloses his views that petitioner has been guilty of a contempt. But the solicitor being, as we have held, in the proper exercise of a lawful right, could be guilty of no contempt.

In Ex parte Boscowitz, 84 Ala. 463, 4 So. 279, 5 Am.St.Rep. 384, cited in Ex parte Wheeler, supra, a judgment of contempt, under circumstances of like character, was ordered quashed on writ of certiorari.

▅ The court exercises discretionary powers in granting writs of prohibition. Ex parte Seals Piano Co., 190 Ala. 641, 67 So. 240. It is an extraordinary writ ordinarily only available when the usual and ordinary proceedings are inadequate to afford redress. 50 Corpus Juris, 653. If the remedy by writ of certiorari is not adequate, resort may be had to the writ of prohibition. 50 Corpus Juris, 687.

▅ As we read the record, and with no reflection whatever on the respondent, petitioner's guilt of contempt is at least tentatively prejudged, and, prima facie the result of any hearing manifest. After all, the matter involves only a legal question as to the extent of the solicitor's authority in the conduct of criminal cases. It is clear that, under these circumstances, the writ of certiorari would prove inadequate. And in some of the cases the matter of public interest has been taken into consideration. 50 Corpus Juris, 709.

Here, the solicitor and the judge occupy high stations in the judicial government of Jefferson county, and it is clearly to the public interest that no unnecessary conflicts arise. As we view it, the underlying basis for this entire controversy relates to the difference of opinion as to the solicitor's authority to make the proposed recommendation in these criminal cases. We have determined the question favorably to such authority, and have concluded that it affirmatively appears the solicitor was in the proper exercise of a lawful right. He could, therefore, be guilty of no contempt, and any such punishment would of consequence be in excess of the power of the court. Ex parte Wilkinson, 220 Ala. 529, 126 So. 102; Ex parte Dickens, 162 Ala. 272, 50 So. 218.

We have concluded, therefore, no other remedy is adequate, and that the writ should accordingly issue. Ex parte Davis, 224 Ala. 66, 139 So. 286. It is so ordered.

Writ awarded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.