5 So.2d 716

### In re WILLIS et al.
### 6 Div. 827.

Supreme Court of Alabama.
Oct. 16, 1941.

Rehearing Denied Jan. 29, 1942.

Lange, Simpson, Brantley & Robinson, Mullins & Deramus, and Graham & Wingo, all of Birmingham, for petitioners.

Chas. W. Greer and Frank Bainbridge, both of Birmingham, for respondent.

GARDNER, Chief Justice.

The Acme Theatres Company obtained (October 26, 1940) the issuance of a temporary injunction writ, upon the order of Hon. John Denson, one of the Judges of the Tenth Judicial Circuit, directed to T. Eugene Connor, Commissioner of Public Safety of the City of Birmingham, the sole party respondent to the bill.

The restraining feature of the writ reads as follows: "from seizing that certain motion picture film known as 'French Girls' Club', and any other motion picture film, in the Galax Theatre, in the City of Birmingham, Alabama, and from directly or indirectly interfering with the exhibition of said film in said theatre and from directly or indirectly harassing or molesting the complainant in and about the exhibition of said film, and from directly or indirectly, by any means whatever, preventing the public from entering said theatre, for the purpose of viewing said film, and from seizing or confiscating any fixture or fixtures of any kind or character located in said theatre, and from padlocking or attempting to padlock said theatre, and from interfering with the operation of said theatre, or with the exhibition of said film in any other manner than that which is prescribed by law and provided for by the ordinances of the City of Birmingham, Alabama, and the laws of the State of Alabama".

Members of the police department did on that day seize the film referred to in the writ. Complainant thereupon petitioned the court for a rule nisi to issue addressed to said respondent Connor, and to T. A. Riley, J. H. Willis, John S. Foster and Henry J. Martin, to show cause why they should not be adjudged in contempt of court for a violation of said injunction writ and punished accordingly, and likewise prayed for a return of said film.

The rule nisi was duly issued. Judge Denson in due course recused himself and the contempt hearing was had before Judge Creel who presides over the equity docket of said Circuit Court. Upon conclusion of the hearing on motion of complainant and acquiesced in by all parties, Henry J. Martin was fully exonerated and adjudged not guilty of any contempt. But as to Connor, Willis, Foster and Riley, the Court found them guilty and imposed, as a punishment, imprisonment for a period of forty-eight hours. There was effort here to prevent, by writ of prohibition, the contempt hearing, but the writ was denied. Ex parte Connor, 240 Ala. 327, 198 So. 850.

Willis is City Attorney and Foster Assistant City Attorney of Birmingham and Riley is the Chief of Police. These three have presented their petition here for certiorari to review the order adjudging them in contempt of court. Ex parte Dickens, 162 Ala. 272, 50 So. 218; Board of Revenue v. Merrill, 193 Ala. 521, 68 So. 971.

As a background for the charges here sought to be reviewed the following facts were developed on the hearing. On October 20th and 21st, Commissioner Connor saw in the daily papers as well as in posters, advertisements of a film known as "'French Girls' Club'" which was to be shown at the Galax Theatre. Accompanied by appropriate pictures these advertisements described the picture as revealing the "Inside Secrets of the Tenderloin", "200 Lovely Girls Fighting for the Love of One Man", "200 Love Starved Girls and One Man", "One Night of Stolen Love", "The Most Daring Picture Ever Filmed", "The Picture Hollywood Didn't Dare to Make", "Spicy", "Risque", "Startling", "Amazing", "Frenchy" and "Not Recommended for Children".

Upon seeing these advertisements Connor concluded the picture was indecent and within the prohibition of Section 5854, City Code of Birmingham, and so notified Riley, the Chief of Police. Riley had likewise seen the advertisements and had sent Kicker, his subordinate, to view the picture and then later to inform them not to show the picture. Much is said as to Kicker's opin-

ion the picture was all right. But it is clear enough Kicker was not the censor and that at that time the Chief of Police must approve or disapprove.

In any event we cannot see that it is a matter of any great moment here. The merits of the case are not to be gone into on a hearing of this character. Certain, it is, however, that if the picture was one not offensive to the City law, it did not run true to the advertisements, and these advertisements were before the court without objection as tending to show the origin of the controversy.

Complainant on October 21st filed a bill seeking injunctive relief against Riley, as Chief of Police and against the City, from interfering in any manner in the exhibition of the film, known as " 'French Girls' Club' ". On that same day Riley and Foster viewed the picture and agreed it was obscene and violative of the city ordinance, and so reported to Connor. On October 23rd, upon final hearing, and after having viewed the picture, Judge Creel dissolved the injunction and dismissed the bill, and an order for re-instatement of the injunction was denied. The record indicates Judge Creel's decision was rested upon a ground which did not embrace the question as to whether or not the picture was violative of the city ordinance and upon that matter no opinion was expressed.

Upon dissolution of the injunction an arrest was made and on October 25th another injunction writ obtained restraining Connor and all members of the Police Department from preventing the public from entering the Galax Theatre in Birmingham, Alabama, and from padlocking the doors of said theatre. To this order for injunction Judge Creel added the following qualification: "This writ shall not be construed as an authorization for the showing of the picture known as 'French Girls' Club' ".

There is no charge of any violation of this injunction.

The contempt proceedings grow out of the third writ issued on order of Judge Denson on October 26th which has been heretofore set out, but the conduct of these petitioners should be viewed in the light of what had gone before as herein briefly related. Judge Creel had, upon final hearing, dissolved the first injunction. As to the second injunction issued by Judge Creel it appears he considered padlocking the

theatre or preventing the public from entering was a "strong arm" method of enforcement not to be approved. But in so ordering expressly stated there was to be no construction given which authorized the exhibition of the picture.

On October 25th officers of the City had made an arrest and contemporaneously therewith had seized the film to be used as evidence. The officers were entirely justified in making the arrest without a warrant for an offense in their presence (Section 3263, Code of 1923, Code 1940, Tit. 15, § 154) to seize the film as evidence. This is the settled rule in this State (Ex parte Hurn, 92 Ala. 102, 9 So. 515, 13 L.R.A. 120, 25 Am.St.Rep. 23), and so generally recognized elsewhere. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; People v. Chiagles, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676, and supplemental annotation 51 A.L.R. 424; 56 C. J. 1198.

Complainant had instituted a detinue suit to recover the film so seized, but unknown to Foster, the Assistant City Attorney, had in the meanwhile secured a duplicate film. The third injunction was then secured, ordered by Judge Denson. Foster, being in doubt as to whether or not the Denson injunction required a surrender of the seized film, went to Judge Denson to make inquiry. He insists, and there is nothing to indicate to the contrary, that at that time he knew nothing of the second film. Judge Denson assured him it did not require a return of the film, but referred only to the future.

Upon coming back to the office of the City Attorney he, with Willis, the City Attorney, read the injunction writ, and reached the conclusion that it did not prevent a seizure of a film by the city in a lawful manner. This opinion was reached by reason of the concluding words of the writ: "in any other manner than that which is prescribed by law and provided for by the ordinances of the City of Birmingham and the laws of the State of Alabama".

True the ordinance against indecent pictures (Section 5854, City Code of Birmingham), did not authorize the seizure of the picture. But there must be read into the ordinance the general well known principle of law that the seizure contemporaneously with arrest was fully justified, and the ordinance is to be so construed.

Thus interpreted the writ did not stand in the way of a seizure in that manner. But the attorneys for the City were of the opinion that a search warrant would be helpful and Recorder Martin was sent for by Mr. Connor and signed the warrant after affidavit had been made. On account of his limited jurisdiction there appears some doubt as to this. All of this was the subject of open discussion in the office. We find no sign of secrecy, and we can attach no importance to the fact that Recorder Martin was not specifically informed of the Denson injunction at that time.

■ This matter of seizure under search warrant should be considered also in the light of the general rule of law that obscene literature is placed among those articles, the possession of which is illegal and subject to seizure in a lawful manner (56 C.J. 1166), and in the further light of the provisions of Title 15 § 101, Code 1940, which authorizes the issuance of a search warrant for personal property in possession of one with intent to use as a means of committing an offense and that such warrant may be issued by a magistrate. Title 15 § 100, Code 1940. If the right of the Recorder to issue the search warrant (Title 37, § 585, Code 1940, Title 38 City Code of Birmingham, 1930), is doubted, a question needing no definite conclusion here, yet in any event it was a matter over which a difference of opinion may reasonably exist, and if the attorneys in good faith so considered, they are justified in so acting.

■ ■ There is nothing in the record justifying, in our opinion, any "conspiracy of silence" in this respect as so strenuously argued by complainant. And we are of the opinion the attorneys for the city were justified in construing the last qualifying words as applicable to all that preceded under the well known rule that when "several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all". Porto Rico Ry., Light & P. Co. v. Mor, 253 U.S. 345, 40 S.Ct. 516, 518, 64 L.Ed. 944; United States v. Standard Brewery, 251 U.S. 210, 40 S.Ct. 139, 64 L. Ed. 229; Rust v. Griggs, 172 Tenn. 565, 113 S.W.2d 733.

■ ■ If another and different construction be placed upon the concluding words of the writ and they be held to apply only to the clause immediately preceding, the result would be an unqualified restraint against interference with the film, even though done in a manner authorized by law. But confessedly the injunction was issued without notice to the City as required by Sec. 8312 (1), Michie's Code, 1928, Code 1940, Tit. 7, § 1063, and this Court in Ex parte Connor, 240 Ala. 327, 198 So. 850, 853, expressly recognized the force of this statute when an ordinance is being enforced in a legal manner saying: "Counsel aptly observe as to this that when an attempt is made to restrain a municipality from enforcing an ordinance in the only way it can be enforced legally, notice is required. Code, § 8312 (1)".

And the authorities are all in accord that an injunction issued in violation of a statute requiring notice is void and will not support a charge of contempt for its violation. Perhaps the best discussion of the question is to be found in People v. Sheriff, 164 Misc. 355, 299 N.Y.S. 9. See, also, Rapides D. D. Co-op. Ass'n v. Mathews, La.App., 158 So. 247; State v. Harris, 229 Mo.App. 721, 81 S.W.2d 632. But we have stated our conclusion that the attorneys for the city were justified in applying the well recognized rule of construction to the language of this writ, and that under such construction no restraint was intended against the City in the enforcement of its ordinance against indecent pictures in any lawful manner.

But whether correct in this construction or not, it appeared entirely reasonable and these attorneys had the right to their opinion in regard thereto. And if they were in the exercise of their legal rights as attorneys clearly no contempt charge can be sustained. Ex parte State ex rel. Bailes, 235 Ala. 133, 177 So. 752. If, therefore, there was reasonable ground for such construction, and these attorneys honestly entertained such an opinion and acted in good faith, they are guilty of no contempt, though it should subsequently develop their judgment was erroneous. There is nothing in the record to even indicate these attorneys advised a disregard of the injunction. They merely advised as to what course was left open to the City to pursue in order to enforce its ordinance. As said in Re Landau, 230 App. Div. 308, 243 N.Y.S. 732, 736, cited in the majority opinion in Ex parte Connor, supra, and speaking of the right of an attorney in good faith to give his advice to his client as to the effect of a court order: "The record requires a holding that he limited himself to the giving of advice as to the meaning of the

language of the order of December 6, 1929. This he had a right to do without being placed in jeopardy in contempt proceedings".

The following cases are to like effect: In re Noyes, 9 Cir., 121 F. 209; In re Cooley, 95 N.J.Eq. 485, 125 A. 486; In the Matter of Kepecs, N.Y.Sup., 123 N.Y.S. 872; Wells v. Commonwealth, 21 Grat. 500, 62 Va. 500; In re Thomas, 56 Utah 315, 190 P. 952; In re Watts, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933; 13 C.J. 41; 17 C.J.S., Contempt, § 35.

Counsel for complainant insists there is evidence of bad faith, and that the city attorneys were in fact advising a defiance of the writ. But we find no evidence in the record of bad faith. Both attorneys expressed highest respect for the judges, both personally and in their official capacity. They have said nothing and been guilty of no conduct indicating a defiance of court orders.

True, Connor had insisted upon enforcement of a city ordinance which he thought was being violated, and these attorneys were making effort to enforce this city law. They were aware of the statute requiring twenty-four hours notice if injunction against a city ordinance is to be sought and that no such notice had been given. But they did not then rest their objection upon that ground, as they evidently considered that the Judges ordering the writs entertained the view the city was going about the matter in a manner unauthorized by law. Judge Creel had viewed the film and dissolved the first injunction. And in the second writ had expressly stated he was not authorizing the exhibition of the picture, but restrained the threatened padlocking of the theatre.

With all of this in mind the attorneys are presented with the third writ by Judge Denson. They had a right to their honest opinion of its meaning and effect and to give that opinion to their client. This they did and nothing more. True they may have been in error in assuming the search warrant would serve a purpose. But if so, it was an error of judgment.

Much argument is indulged that the attorneys did not on this occasion specifically instruct that an arrest should be made at the time the film was seized. Perhaps there was no definite instruction as to this. But when the first film was seized there was an arrest and these attorneys assumed, as we think they had a right to assume, that an officer sent to seize the film would make an arrest

for an offense committed in his presence. It was well understood law. It was their duty and these attorneys state they had no other thought than that the arrest would be contemporaneous with the seizure. But there was no arrest, and much is made of this fact. It is, however, readily explained by the uncontradicted proof. President Green of the City Commission was evidently desirous that this entire matter be amicably settled. There appears to have been some talk along that line. At least it is clear that such was his desire. After the conference in the city attorney's office had adjourned Chief Riley and President Green went off together and Green told Riley to make no arrest and the officers who seized the film did make no arrest under these instructions. But all of this was wholly unknown to these attorneys and they of course are not to be held responsible. They as well as Connor were surprised when they learned no arrest had been made. Had the arrest been made contemporaneously with the seizure, it cannot be plausibly argued that the seizure would have been unlawful. The cited authorities sustain the view of the legality of the seizure under those circumstances. Nor do we think it can be said the seizure would have been violative of the writ.

But if the writ be construed otherwise and as restraining a lawful enforcement of the ordinance, then no notice was given and it would be held invalid.

But that question aside, reasonable debatable ground is shown, and these attorneys, acting in good faith, had a right to their opinion and to advise their client as to their construction of the language used. And we think they acted in good faith and in no sense in defiance of the courts. We are in full accord with the principle that the dignity and majesty of the law must be upheld. Easton v. State, 39 Ala. 551, 552, 87 Am.Dec. 49; Ex parte Walker, 25 Ala. 81. And that "An affront to the court is not merely an affront to the personality of the presiding judge, but is an affront to the people of the state who by their Constitution instituted and created the court". John F. Jelke Co. v. Hill et al., etc., 208 Wis. 650, 242 N.W. 576, 581.

We know also that a free and independent judiciary, with an eye single to the fair and impartial administration of justice and with power to enforce its orders and decrees, forms the foundation of this government of ours. Attorneys are officers of the court and are sworn to obey and re-

spect. Their obligation in this respect must never be overlooked. But there must exist, at the same time, a freedom of thought among the members of the legal profession, and a right to their opinion and their expression of such opinion in good faith to their clients. As said in Re Watts, 190 U.S. 1, 23 S.Ct. 718, 725, 47 L.Ed. 933: "the preservation of the independence of the bar is too vital to the due administration of justice to allow of the application of any other general rule".

We search this record in vain to find evidence of bad faith on the part of these attorneys. They were, in our opinion, in good faith endeavoring to enforce the city ordinance against indecent pictures in a lawful manner and in a manner which did not run counter to the injunction writ. And as we have previously stated the history of the entire litigation tended to lead them to the belief that the courts meant no restraint against the city in a lawful enforcement of its ordinance.

 We have not overlooked the argument that injunction writs should be clear and specific (citing Ex parte Vaughn, 205 Ala. 296, 87 So. 792, 793; National Labor Relations Board v. Bell Oil & Gas Co., 5 Cir., 98 F.2d 405; Uservo, Inc., v. Selking, 217 Ind. 567, 28 N.E.2d 61; Mattos v. Superior Court, 30 Cal.App.2d 641, 86 P.2d 1056; Kelly v. Cape Gerardeau, 230 Mo.App. 137, 89 S.W.2d 693), and that a vague and indefinite order cannot sustain a conviction for contempt. Evening Times P. & P. Co. v. American Newspaper Guild, 124 N.J.Eq. 71, 199 A. 598; Philadelphia Dairy Products Co. v. Quaker City Ice Co., 306 Pa. 164, 159 A. 3, 84 A.L.R. 466; New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Oliver v. Orrick, 220 Mo.App. 614, 288 S. W. 966. But we pass this insistence by without further consideration as we think the decision here may well be rested upon the real meritorious question in the case. We pass too the argument there has been an entire change of parties and a discontinuance, as unnecessary to determine, for that too leaves to one side the merits of the case.

 As to Chief Riley little need be said. He was not a party to the injunction suit and no such writ was served upon him. We think it clear that Riley did not know and was not familiar with the terms of this injunction writ. He heard some discussion and he was there to enforce the ordinance if the city attorney, the legal mind of the city, considered it could lawfully be done and without any conflict with the injunction writ. In instructing for no arrest he was merely following the direction of the President of the Commission.

He was familiar with the history of the litigation in a general way, but he very naturally looked to the city attorney for instruction as to the law. Of course, if he had knowledge of the terms of the writ and that a seizure was prohibited and with such knowledge violated the same he would not be protected by the mere advice of the city attorneys. He was present a part of the time when the search warrant was being prepared and he was impressed that all of this with the arrest and seizure would be lawful. But it is clear enough he had no actual knowledge that the writ restrained a seizure of the film under any and all conditions. And we have considered that the city attorneys were justified in a bona fide opinion it did not.

Under the circumstances here outlined his lack of actual knowledge or notice that he was violating the writ should suffice for his exoneration. In re Rice, C.C., 181 F. 217; State ex rel. Lindsley v. John Grady et al., 114 Wash. 692, 195 P. 1049, 15 A.L.R. 383; Harris v. Hutchison, 160 Iowa 149, 140 N. W. 830, 44 L.R.A.,N.S., 1035.

Counsel for complainant lay much stress upon Ex parte Connor, supra, as if upon that appeal all questions now presented were here for review. But these arguments overlook the fact that the court on that appeal had but one question for consideration, and that was one of jurisdiction of the trial court to hear and determine the matter of contempt. The majority ruled that it had the right to so proceed. And all that was said in the opinion on that appeal must be read in the light of the sole question there presented.

 We are, therefore, of the opinion these petitioners are entitled to relief and that the petition for the writ of certiorari is due to be granted and that the order of commitment as to these petitioners be quashed. As we view this proceeding it is one in the nature of a civil contempt as defined in Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. Complainants to the amended bill instituted the proceedings and sought a return of the film as well as punishment for contempt. Being the unsuccessful parties it is proper the cost of

292

this proceeding both in this Court and the Court below be taxed against them. Board of Revenue v. Merrill, 193 Ala. 521, 68 So. 971, L.R.A.1915E, 640. It is so ordered.

Writ awarded. Judgment quashed.

All Justices concur except KNIGHT, J., not sitting.