Judith S. Crittenden, a lawyer, was held by Judge R.A. Ferguson to be in criminal contempt of court "for her willful disobedience [of a court order] wherein she encouraged, directed and advised" her client, in a divorce action, that the client, the wife, could move her children out of state, even though the divorce judgment entered in the case had specifically prohibited the removal of the children from the Jefferson/Shelby County area without prior court approval.
Crittenden appealed to the Court of Civil Appeals, as authorized by Rule 70A(g)(2), Ala.R.Civ.P., and that Court, with two Judges dissenting, reversed the judgment of the trial court and remanded the cause, stating, "We have thoroughly reviewed the record, but we have found no evidence to support a finding of criminal contempt against Crittenden."Crittenden v. Ferguson, 819 So.2d 622, at 624 (Ala.Civ.App. 2001)
This Court granted Judge Ferguson's petition for certiorari review. He contends that the Court of Civil Appeals substituted its findings for those of the trial judge, who had seen and had heard the witnesses, and contends that the Court of Civil Appeals misapplied the law.
We have reviewed the briefs of the parties and have read the applicable portions of the record relating to the contempt citation. We conclude that the Court of Civil Appeals did err; therefore, we reverse and remand.
 Facts
The pertinent facts are stated in the opinion of the Court of Civil Appeals, Crittenden v. Ferguson, supra, but we restate some of them for a better understanding of the conclusion we reach.
Crittenden represented Judith Ladden, the plaintiff in a divorce proceeding before Judge Ferguson. On April 24, 1998, Judge Ferguson entered a final judgment in that action, wherein he ordered, in part, "[t]hat the children's residence shall not be moved outside the Jefferson/Shelby County Area on a permanent basis without prior approval" of the court. See Crittenden v. Ferguson, 819 So.2d at 623. In November 1998, Ms. Ladden petitioned the court to modify the judgment, alleging that the father had moved to Columbus, Mississippi, and that he had "failed or refused to provide [the mother] with his current address or the whereabouts of the minor children while in his care, custody and control." Crittenden v. Ferguson, 819 So.2d at 623.
According to the opinion of the Court of Civil Appeals, the trial court conducted an initial hearing on the mother's request to modify the divorce judgment so as to allow the children to move with her outside the Jefferson/Shelby County area. This initial hearing was conducted in February 1999, and the trial on the request began on March 27, 2000, and was completed on March 29, 2000. Although the court granted Ms. Ladden's petition to modify *Page 628 
the divorce judgment and allowed her to relocate the children, the court, in a separate order, found Ms. Ladden "in criminal contempt of court for her willful failure to comply with Paragraph 7 of the Final Judgment of Divorce . . . wherein she removed the minor children of the parties from the Jefferson/Shelby County area on a permanent basis without prior court approval through her willful contumacy." See Crittenden v.Ferguson, 819 So.2d at 623-24. Dr. Ladden was also sentenced to jail for his willful failure to abide by the terms of the divorce judgment, and on March 29, 2000, the court, while sentencing the parties to jail, informed Crittenden that it intended to cite her for criminal contempt. On April 4, 2000, the judge followed up on his statement and issued a "Citation for Criminal Contempt" against Crittenden, finding that she had "wilfully and in disobedience to this court's lawful orders, encouraged, directed and advised [the mother] to directly violate the restrictive move clause of the Final Judgment of Divorce without agreement by the parties or prior approval of the court."[1] Crittenden v. Ferguson, 819 So.2d at 624. *Page 629 
 Scope of Review
Rule 70A, Ala.R.Civ.P., now controls contempt proceedings arising out of civil actions, whether the contempt is civil contempt or criminal contempt,[2] but it is unquestioned that this case involves criminal contempt.
"Criminal contempt" is defined in Rule 70A(a)(2)(C)(ii), Ala.R.Civ.P., as including "[w]illful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor."
What is the scope of review of a judgment of criminal contempt? The Court of Civil Appeals did not state the scope of its review on appeal, and we do not know whether Crittenden argued that issue in the Court of Civil Appeals; however, Crittenden, in her brief to this Court, specifically argues that the standard for review of a criminal-contempt order is different from the standard for review of a civil-contempt order. Citing Ex parte Woodall, 730 So.2d 652, 658 (Ala. 1998), Crittenden states that the standard of review of a criminal-contempt order is the same as that applied in criminal cases generally, which is to determine whether there is legal evidence from which a rational finder of fact could, by fair inference, find the defendant guilty beyond a reasonable doubt.
Rule 70A(g)(2), Ala.R.Civ.P., authorizes an appeal in a case such as this. Insofar as we can tell, this Court, since adopting Rule 70A, Ala.R.Civ.P., has not considered the standard of review an appellate court should apply when reviewing a finding of criminal contempt. That issue has been addressed by the Court of Civil Appeals; see Gordon v.Gordon, 804 So.2d 241 (Ala.Civ.App. 2001), and Shonkwiler v. Kriska,780 So.2d 703 (Ala.Civ.App. 2000). We agree with Crittenden's argument that the standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock,485 U.S. 624 (1988); Combs v. Ryan's Coal Co., 785 F.2d 970 (11th Cir. 1986); and United States v. Turner, 812 F.2d 1552 (11th Cir. 1987) (an attorney was found guilty of criminal contempt by United States District Judge Brevard Hand). In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
 "The essential elements of the criminal contempt for which punishment has been imposed on Moore are that the court entered a lawful order of reasonable specificity, Moore violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt."
Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordonv. United States, 438 F.2d 858, 868 n. 30 (5th Cir. 1971):
 "`The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.'"
Turner, 812 F.2d at 1563. As stated before, we have reviewed the record and we have set out portions of the evidence that *Page 630 
were before Judge Ferguson, and we conclude that the evidence was sufficient to permit Judge Ferguson, as the trier of fact, to find that he had entered a lawful order of reasonable specificity, that Crittenden had violated that order, and that her violation was wilful.[3]
 I.
Judge Ferguson argues in his certiorari petition that the decision of the Court of Civil Appeals conflicts "with the prior decision of the United States Supreme Court in Maness v. Meyers, 419 U.S. 449 (1975), . . . [wherein] the Supreme Court held that the orderly and expeditious administration of justice by the courts requires orders to be followed where the court issuing such orders has subject matter and personal jurisdiction, and that such orders must be obeyed by the parties until reversed." (Emphasis in original.) Judge Ferguson also argues that the opinion of the Court of Civil Appeals conflicts with cases from this Court and the Court of Civil Appeals that hold, he says, "that where the evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the trial court's findings of fact." Judge Ferguson further argues "that in reviewing the trial court's finding of contempt, the Court of Civil Appeals erred by (1) reweighing the evidence, (2) finding and making credibility choices, (3) finding that Crittenden's advice to her client was a legal opinion, and (4) refusing to adhere to the ore tenus standard of review."
In reversing the judgment of contempt entered by Judge Ferguson, the Court of Civil Appeals wrote:
 "We have thoroughly reviewed the record, but we have found no evidence to support a finding of criminal contempt against Crittenden. `An error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt.' In re Powers, 523 So.2d 1079, 1082 (Ala.Civ.App. 1988); see In re Carter, 412 So.2d 811 (Ala.Civ.App. 1982). We note that the mother's petition to modify was delayed for over a year from the original hearing date; that when she filed the petition, the father no longer resided in Alabama; that the court granted the mother's petition to remove the residency restriction; and that the mother and Crittenden both testified that Crittenden had advised the mother that she could be held in contempt if she relocated without the court's approval. We conclude that Crittenden's conduct did not amount to a willful and deliberate disobedience of the court's order and therefore was not contempt. Accordingly, we reverse the judgment of the trial court and remand the case for the court to set aside the judgment of contempt against Crittenden."
Crittenden v. Ferguson, 819 So.2d at 624-25.
Was the evidence before the trial judge sufficient to permit him to find Ms. Crittenden guilty of criminal contempt beyond a reasonable doubt? We conclude that it was. We have reviewed the record closely. It shows that at the trial on the mother's *Page 631 
motion to modify the divorce judgment the mother testified that Crittenden "advised me it would be okay to move." At Crittenden's contempt hearing, however, Ms. Ladden recanted her earlier testimony and testified that Crittenden had not advised her to relocate the children. Crittenden testified that she had told Ms. Ladden, "I [told Ms. Ladden I] thought the court would understand if she moved" (R. 21), but that she had not advised Ms. Ladden to move out of the area specified in the judgment. The judge stated that he had a different recollection of Crittenden's statements, and he asked her: "On the occasion of the conversation in my chambers on or about May 11, 1999, did you not make this statement in words or words in substance to the effect that `I advised my client to leave or to move, not to leave, but to move to New Orleans, that I advised my client'?" Crittenden testified that she did not remember making that statement. The judge stated that he recalled a conference in his chambers, and he stated his recollection of what occurred at that conference:
 "The Court also specifically remembers the meeting in my chambers when the lawyers were present, specifically you and Mr. Cromer, [Dr. Ladden's counsel] and myself, and a conversation taking place, not in which I was necessarily a party, where certain statements were made between [Ms. Crittenden] and Mr. Cromer.
 "On the occasion of the conversation in my chambers on or about May 11, 1999, did you not make this statement in words or words in substance to the effect that I advised my client to leave or to move, not to leave, but to move to New Orleans, that I advised my client?
"MS. CRITTENDEN: No, sir."
The judge continued the contempt hearing to subpoena additional witnesses, and it called Dr. Ladden's attorneys, Terry Cromer and John Durward, to testify concerning the May 11, 1999, pretrial conference in the judge's chambers, which had been attended by Crittenden, Cromer, and Durward. Cromer testified that Crittenden stated, "[I]f anyone needs to go to jail, it's me, because I advised her to move to New Orleans."[4]
Durwood testified that Crittenden said, "[I]f anyone should be held in contempt, it's me, because I advised my client to move to New Orleans or *Page 632 
to go ahead and move."[5] The judge called his judicial assistant as a witness. She testified that she had not been in his chambers but that she, on the occasion of the subject meeting, "heard [Judge Ferguson] recite to the lawyers to the effect that [he] would enforce [his] orders, any orders that [he] had entered in the case and that [he] would enforce those to the extent of contempt, possible jail." Latresia Kinnell was called as a witness by Mr. Bainbridge, and she testified in answer to questions by Mr. Bainbridge about the May 11 conference.[6]
 II.
Crittenden argues here, as she did to the trial judge and to the Court of Civil Appeals, "that her advice was an expression of legal opinion made in good faith, an argument made so as to fit her conduct within the holdings of In re Willis, 242 Ala. 284, 5 So.2d 716 (1941); In rePowers, 523 So.2d 1079 (Ala.Civ.App. 1988); and In re Carter, 412 So.2d 811
(Ala.Civ.App. 1982)." See Crittenden v. Ferguson, 819 So.2d at 625 (Crawley, J., dissenting). We have examined the facts of those cases and believe them to be different from the facts here. In fact, in Willis, this Court found that the attorneys in that case had reasonable grounds for the construction they had given the injunction the judge had issued, and that they had acted in good faith in construing it. That conclusion, however, was apparently based on the fact that the Court found that "[t]here is nothing in the record to even indicate these attorneys advised a disregard of the injunction." 242 Ala. at 290, 5 So.2d at 720. We conclude that the evidence in this case is sufficient, although it is controverted, for Judge Ferguson to find, beyond a reasonable doubt, that Ms. Crittenden did advise her client that she could move.
Because this case involves a criminal contempt by an officer of the court, and because we recognize that attorneys should not be held in contempt for giving legal opinions that are made in good faith, we have carefully reviewed the record in this case. After that review, we conclude *Page 633 
that the trial judge could properly find Crittenden guilty of criminal contempt.
The judgment of the Court of Civil Appeals is reversed and the case is remanded.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Lyons, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] The contempt citation (C.R. 75-77) reads, in part, as follows:
"CITATION FOR CRIMINAL CONTEMPT
 "THIS MATTER, coming on for hearing on the 27th day of March, 2000 with the Plaintiff, Defendant and their attorneys being present with an official court reporter. The Plaintiff testified and her attorney of record made a statement in Open Court during the trial of all pending matters. The Court, having heard same, is of the opinion that the following citation issue. Accordingly, it is therefore
"ORDERED, DECREED and ADJUDGED by the Court:
 "1. That on or about the 24th day of April, 1998, this Court entered a Final Judgment Of Divorce wherein amongst other things contained the following in Paragraph 7:
 "`. . . That the children's residence shall not be moved outside the Jefferson/Shelby County Area on a permanent basis without prior approval.'
 "2. That on or about the 23rd day of November, 1998, the Plaintiff filed a Verified Petition For Rule Nisi and Modification of the Final Judgment of Divorce requesting, along with other requests, that the restriction preventing the moving of the minor children from the Jefferson/Shelby County area be removed due to a material change in circumstances.
 "3. That subsequent to the Plaintiff's Verified Petition For Rule Nisi And Modification, the Defendant filed a Cross-Petition for Rule Nisi And Modification and Plaintiff filed an Amended Verified Petition For Rule Nisi And Modification.
 "4. That during the pendency of said matters, at a pre-trial conference in the Court's chambers, Plaintiff's attorney informed Defendant's attorneys that she had advised her client to move from the Jefferson/Shelby County area as restricted by the Final Judgment Of Divorce.
 "5. That the trial of all pending matters came on for hearing on the 27th and 28th day of March, 2000 wherein the Plaintiff testified that she had been advised by her attorney of record, Judith S. Crittenden, as follows:
 "`My attorney advised me it would be okay to move,' contrary to the Final Judgment restriction.
 "6. That Plaintiff's attorney of record, Judith S. Crittenden, made a statement in Open Court as follows:
 "`[A]nd I will say as an officer of this Court if anyone is to be faulted — as I said in chambers a year ago — that I had advised my client that under the circumstances that her having made a good faith effort to seek the permission of the Court, and with the end of the school year coming, and with no resolution, and with Dr. Ladden still insisting for reasons unknown that she could not move from the state, that in my judgment the Court would understand if she went on and made arrangements so that the children could get — could become enrolled in school.'
 "7. That, Plaintiff's attorney of record, Judith S. Crittenden, willfully and in disobedience to this Court's lawful Orders, encouraged, directed and advised the Plaintiff to directly violate the restrictive move clause of the Final Judgment Of Divorce without agreement by the parties or prior approval of this Court."
[2] See, Ex parte J.R.W., 667 So.2d 88 (Ala. 1995), and see State v.Thomas, 550 So.2d 1067 (Ala. 1989), which contains a general discussion of the distinctions between civil and criminal contempt.
[3] Before the adoption of Rule 70A, Ala.R.Civ.P., this Court, in Exparte J.R.W., 667 So.2d 88, 89-90 n. 1 (Ala. 1995), had stated:
 "We assume for purposes of addressing whether the evidence supported the circuit court's findings that the adjudication here was for criminal contempt, because such contempt must be supported by a higher burden of proof. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Gompers v. Bucks Stove Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). . . ."
[4] Portions of Cromer's testimony (R. 41-43) follow:
 "THE COURT: Was there a conference in this Court's chambers on that date?
"THE WITNESS: Yes, sir.
"THE COURT: Were you present?
"THE WITNESS: Yes, sir.
"THE COURT: Who was present at that conference?
 "THE WITNESS: Myself, John Durward, Ms. Crittenden. I believe Latresia Kinnel, I believe was there and yourself.
 "THE COURT: Okay. Do you remember any conversations in chambers on that occasion?
 "THE WITNESS: Well, I — You called us into the chambers to talk to — or you had told us to go out and talk. You called the docket and told us to go out and talk, and then you called us into chambers —
"THE COURT: Okay.
 "THE WITNESS: — and informed us that you couldn't hear the case that day, that you were in trial, I believe. And we had a discussion about the situation between the parties. And Ms. Crittenden informed you that Ms. Ladden was moving, and that we discussed the house being up for sale. And I informed you that — Well, I made the statement that if Ms. Ladden moves to New Orleans that I will be filing a contempt action, a rule nisi. And Ms. Crittenden stated at that time that: If anyone needs to go to jail, it's me, because I advised her to move to New Orleans."
 "THE COURT: Okay. And what, if anything did you say as a result of those comments?
 "THE WITNESS: Well, I didn't say anything at that point because we ended our conversation in my judgment at that time."
[5] Attorney Durward testified as follows about the conference (R. 46-47):
 "THE COURT: Okay. On that occasion what, if anything, do you recall being said by Ms. Crittenden or Mr. Cromer?
 "THE WITNESS: Well, we went in the chambers, and I believe you told us that we were not going to get reached and Ms. Crittenden said that she wanted to just let the Court know that Mrs. Ladden, her client, was going to go ahead and move to New Orleans so that the kids could be there for the start of school. And nothing was said right away. I think you looked at Mr. Cromer and he kind of shrugged his shoulders and then finally said: Well, if she does move, there is a — there's a provision in the original divorce against either parent moving the children. If she does violate that provision that he would file a Rule Nisi on behalf of our client. And Ms. Crittenden then said that: Well, if anyone should be held in contempt, it's me, because I advised my client to move to New Orleans or to go ahead and move.
 "THE COURT: Okay. On that same occasion do you recall this Court making a statement to either or both of the lawyers?
"MR. BAINBRIDGE: You mean following?
"THE COURT: Following that statement.
 "THE WITNESS: I believe you may have said that you had contempt powers over parties and attorneys, but I'm not completely sure about that."
[6] She testified as follows (R. 52):
 "Q. Was there any statement made by Ms. Crittenden involving any advice she had given or would give to her client regarding moving?
 "A. I recall her saying words to the effect that she was probably going to go ahead and advise Ms. Ladden to move.
"Q. Not that she had advised her?
"A. No.
 "Q. In response to that statement, what was said, if anything by Mr. Cromer?
"A. Nothing."