PITTMAN, Judge.
M.G.D. (“the mother”), the mother of three minor children (“the children”), appeals from an ex parte order of the Shelby Juvenile Court (“the juvenile court”) restraining her from taking the children out of the juvenile court’s geographical jurisdiction without the juvenile court’s prior permission. For the reasons discussed below, we dismiss the appeal as being from a void injunctive order and remand the cause with instructions.
The children were born of the mother’s marriage to M.B. (“the father”). When the mother and the father divorced in 2009, the divorce judgment awarded the father primary physical custody and awarded the mother visitation. In December 2013, the father died.
A few days after the father -had died, L.B. and C.B. (“the paternal grandparents”), the paternal grandparents of the children, filed dependency petitions regarding the children in the juvenile court. The dependency petitions alleged that the children were dependent because the father was dead and because, according to the paternal grandparents, the mother was unable to care for the children because, according to the paternal grandparents, the mother lacked stable housing, lacked mental stability, lacked transportation, and lacked income. The dependency petitions further alleged that granting the paternal grandparents custody of the children would be in the children’s best interests.
In January 2014, before the mother had been served with process, the paternal grandparents filed a verified motion (“the January custody motion”) seeking an ex parte order granting them pendente lite custody. In response, the juvenile court, in February 2014, entered an order requiring the paternal grandparents to have a home study performed by the Shelby County Department of Human Resources (“DHR”), appointing a guardian ad litem to protect the children’s interests, and setting the January custody motion for a hearing in March 2014. Later in February 2014, the mother was served with process. At the March 2014 hearing regarding the January custody motion, the parties consented to the entry of an order continuing that hearing until April 2014 in order to give DHR an opportunity to *608 complete its home study regarding the paternal grandparents and to perform a home study regarding the mother, and the juvenile court entered such an order. That same day, the juvenile court appointed counsel to represent the mother. The April 2014 hearing was subsequently continued, and, ultimately, the actions were set for trial in July 2014.
As of May 16, 2014, the juvenile court had not entered any order addressing pen-dente lite custody.[1] On May 16, 2014, the paternal grandparents and the guardian ad litem jointly filed a motion (“the May 16 motion”) seeking an order setting an immediate hearing and requiring the parties to appear at that hearing and an order granting the paternal grandparents immediate custody of the children. The May 16 motion alleged that the mother had threatened to take the children to another state, that the mother had abused alcohol and prescription drugs in the past, that the mother lacked stable housing and stable employment, and that the mother had “a history of mental health issues and anger management issues.” In support of the May 16 motion the paternal grandparents and the guardian ad litem filed affidavits signed by the mother’s mother, the mother’s brother, and the mother’s sister-in-law in which they attested to information that, if true, would tend to prove the allegations of the motion. The certificate of service on the May 16 motion certified that a copy of the motion had been served on the mother’s counsel by mailing it to her on May 16, 2014.
Later on May 16, 2014, the juvenile court held a hearing (“the May 16 hearing”) regarding the May 16 motion. Neither the mother nor her counsel had been given actual notice of either the May 16 motion or the May 16 hearing before the juvenile court held that hearing, and neither the mother nor her counsel were present when the juvenile court held that hearing. Later that same day, the juvenile court entered an order (“the May 16 order”) stating:
“Upon consideration of the [May 16] Motion [for immediate custody], together with [the] Affidavits [filed in support of it] and a review of the pleadings and information in the court file, and after consultation with the Guardian ad Litem appointed herein, the Court is of the opinion that an Ex Parte Order is necessary to protect the health, safety and well-being of the minor children and that, absent the Order entered herein, the minor children are likely to suffer grave and irreparable harm. It is therefore, Ordered, Adjudged and Decreed as follows:
“A. That the parties hereto are prohibited from removing the minor children from the jurisdiction of this Court without the prior permission of this Court, pending further Order of this Court.
“B. That a hearing regarding this matter is hereby set for the 3rd day of June, 201í ... to address the extension of the ex parte order herein.”
(Emphasis added.)
On May 20, 2014, the mother filed a motion titled “Emergency Motion to Set Aside Ex Parte Order of May 16, 2014 or in the Alternative, Motion for Permission to Travel with the Minor Children Out of State” (“the May 20 motion”). The May *609 20 motion alleged, among other things, that neither the mother nor her counsel had been given actual notice of the May 16 motion or the May 16 hearing before the juvenile court held that hearing, that the procedural requirements for holding an ex parte hearing had not been met before or after the juvenile court held the May 16 hearing, and
“4. That the [mother’s counsel] avers that [the May 16] Order preventing the removal of the minor children from the jurisdiction of the Court should be set aside and held for naught or in the alternative, the Mother should be allowed to take the minor children with her to Arizona with whatever appropriate safeguards this Honorable Court thinks are necessary to protect the best interests of the minor children along with the understanding that [the mother] will return with the minor children for [the trial] in July.
“5. That the Ex Parte [May 16] Order violates the Mother’s constitutionally protected rights to due process and her liberty interests in raising her children how she sees fit and proper.
“6. That the Mother is the legal custodian of the minor children.
“7. That in March, the mother ... accepted a job with the Federal Government in Tucson, Arizona earning approximately $65,000.00 per year with a sign on bonus of $8,114.85. Further, the Mother has been a contract employee with UAB hospital since February 2014, earning in excess of $20.00 per hour. Further, as custodian of the minor children[,] the mother will receive the Social Security survivor benefits for the benefit of the minor children. The mother can more than adequately meet the financial needs of the minor children. That the Mother must report for her employment on May 28, 2014, for training and will begin her official job on June 1, 2014.
“8. That the Mother has moved her official start day of her new employment to June 2, 2014, to accommodate the minor children’s school schedule and not to disrupt their routine.
“9. The Mother has secured temporary housing in Arizona that is actually located on the campus of her employer and is a federal housing complex. The temporary housing will be adequate for her and the minor children and will afford them the opportunity to explore the Tucson area and find a home in the Tucson area. The mother can adequately meet the physical needs of the minor children.”
In addition, the May 20 motion alleged that the testimony contained in the affidavits that had been filed in support of the May 16 motion was false and was the product of animosity the mother’s mother, the mother’s brother, and the mother’s sister-in-law felt toward the mother. The May 20 motion also alleged that the mother had planned to leave Alabama on May 23, 2014, and that the mother would not leave Alabama without the children. Based on those allegations, the mother asked the juvenile court to set aside the May 16 order or, in the alternative, to allow her to take the children to Arizona and return with them for the July 2014 trial of the dependency actions.
On May 23, 2014, although the juvenile court had not ruled on the May 20 motion, the mother filed a notice of appeal to this court in which she sought appellate review of the May 16 order. On May 30, 2014, the paternal grandparents filed a motion (“the May 30 motion”) in the juvenile court alleging that the mother had taken the children out of Alabama in violation of the May 16 order and asking the juvenile court to hold the mother in contempt and to *610 enter pick-up orders with respect to the children. On June 3, 2014, the juvenile court entered an order (“the June 3 contempt citation”) citing the mother for contempt for violating the May 16 order and requiring the mother to appear at a hearing (“the show-cause hearing”) on June 9, 2014, in order to show cause why she should not be incarcerated for her contempt. After granting a one-day continuance, the juvenile court held the show-cause hearing on June 10, 2014, and, on June 12, 2014, it entered an order (“the June 12 order”) stating, in pertinent part:
“This case came before the Court on the 10th day of June, 2014 on the [May 30] Motion for Contempt and Request for Pick-Up Orders filed by the [paternal grandparents]. After argument of counsel for the parties, review of the Court file and documents submitted, it is the opinion of this Court that the following Order is needed to protect the safety and welfare of the minor children[;] it is therefore Ordered as follows:
“1. The minor children shall be immediately returned to the jurisdiction of this Court.
“2. That Pick-Up Orders shall be forthwith issued for the children. That said Pick-Up Orders shall be entered into the [National Crime Information Center] Nation-wide database.
“3. That Certified copies of said Pick-Up Orders shall be provided to the [paternal grandparents] for the purpose of allowing [the paternal grandparents] to take further action to obtain possession of said minor children.
“4. That the issue of the mother’s contempt of this Court’s prior [May 16] Order shall be heard upon return of the mother and minor children.
“5. That this matter remains set for Trial as previously ordered.”
That same day, the juvenile court issued pick-úp orders (“the pick-up orders”) regarding the children.
On appeal, the mother first argues that the May 16 order is void because, she says, the juvenile court entered it without affording her notice and an opportunity to be heard.[2] Because that argument presents an issue of law, our standard of review is de novo. See, e.g., Howard v. Wood, 47 So.3d 1280, 1282 (Ala.Civ.App.2010) (“[W]hen a question is purely an issue of law, the ore tenus rule does not apply and appellate review is de novo.”).
Section 12-15-131, Ala.Code 1975, provides that a juvenile court may enter an order restraining the conduct of any party over whom the juvenile court has obtained jurisdiction if all of the following have occurred:
*611 “(1) An order of disposition of a delinquent child, dependent child, or a child in need of supervision has been made in a proceeding pursuant to this chapter. '
“(2) The juvenile court finds that the conduct of the party is or may be detrimental or harmful to the delinquent child, dependent child, or child in need of supervision and will tend to defeat the execution of the order of disposition made.
“(8) Notice of the motion and the grounds therein and an opportunity to be heard thereon have been given to the party against whom the order is directed.”
(Emphasis added.) Section 12-15-131 did not authorize the juvenile court to enter the May 16 order restraining the mother because there had been no finding of dependency, much less a disposition, when the May 16 order was entered and because the mother had not been given actual notice and an opportunity to be heard before the entry of the May 16 order.
Section 12-15-138, Ala.Code 1975, provides that “[t]he juvenile court, at any time after a dependency petition has been filed, or on an emergency basis, may enter an order of protection or restraint to protect the health or safety of a child subject to the proceeding”; however, § 12-15-139, Ala.Code 1975, provides that such “[a] protection or restraint order” is to be entered “after notice and a hearing.” Section 12-15-138 did not authorize the juvenile court to enter the May 16 order restraining the mother because she had not been given actual notice and an opportunity to be heard before the May 16 order was entered as required by § 12-15-139.
Section 12-15-141, Ala.Code 1975, provides:
“The juvenile court may enter an ex parte order of protection or restraint on an emergency basis, without prior notice and a hearing, upon a showing of verified written or verbal evidence of abuse or neglect injurious to the health or safety of a child subject to a juvenile court proceeding and the likelihood that the abuse or neglect will continue unless the order is issued. If an emergency order is issued, a hearing, after notice, shall be held within 72 hours of the written evidence or the next judicial business day thereafter, to either dissolve, continue, or modify the order.”
(Emphasis added.)
The May 16 order did not comply with § 12-15-141 because the mother was not given actual notice and an opportunity to be heard within 72 hours of the filing of the paternal grandparents’ written evidence in support of the May 16 motion or the next judicial business day thereafter. Because the mother was not given actual notice and an opportunity to be heard before the entry of the May 16 order or within 72 hours after the filing of the paternal grandparents’ written evidence in support of the May 16 motion or the next judicial business day thereafter, the May 16 order violated the mother’s procedural-due-process rights. See Alabama Republican Party v. McGinley, 893 So.2d 337, 344 (Ala.2004) (“The hallmarks of procedural due process are notice and ‘the opportunity to be heard “at a meaningful time and in a meaningful manner.” ’ ” (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting in turn Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965))).
In Ex parte Third Generation, Inc., 855 So.2d 489, 492-93 (Ala.2003), our supreme court stated:
“As stated ábove, Satterfield [ v. Winston Industries, Inc., 553 So.2d 61 (Ala.1989),] includes in the definition of a ‘void’ judgment for purposes of Rule *612 60(b)(4)[, Ala. R. Civ. P.,] those judgments in which the trial court has ‘acted in a manner inconsistent with due process.’ 553 So.2d at 64. However, as we recently discussed in Neal v. Neal, 856 So.2d 766 (Ala.2002), the term ‘due process,’ in the context of providing a foundation for declaring a judgment void, refers to procedural, rather than substantive, due process:
“‘“[I]t is established by the decisions in this and in Federal jurisdictions that due process of law means notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing.”
“ ‘Frahn v. Greyling Realization Corp., 239 Ala. 580, 583, 195 So. 758, 761 (1940) (emphasis added- [in Neal ]). The rule that a want of due process, so defined, voids a judgment is not redundant with the rule that a want of personal jurisdiction likewise voids a judgment, for a person already effectively made a party to litigation could, on some critical motion or for some critical proceeding within that litigation, be deprived of the “notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing,” required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Frahn, supra. See Winhoven v. United States, 201 F.2d 174 (9th Cir.1952), Bass v. Hoagland, 172 F.2d 205 (5th Cir.1949), Cassioppi [v. Damico, 536 So.2d 938 (Ala.1988) ], and Seventh Wonder [v. Southbound Records, Inc., 364 So.2d 1173 (Ala.1978) ].’
“Neal, 856 So.2d at 781-82.”
In the present case, because the May 16 order violated the mother’s procedural-due-process rights, the May 16 order is void. See Ex parte Third Generation.
The mother also argues that, because the May 16 order is void, the June 3 contempt citation, which cited her for contempt based on a violation of the May 16 order, is also void. Because that argument presents an issue of law, our standard of review is de novo. See Howard, supra. The general rule is that the filing of a notice of appeal deprives a trial court of jurisdiction to act except on matters entirely collateral to the appeal. See Horton v. Horton, 822 So.2d 431, 434 (Ala.Civ.App.2001). We note that, in obi-ter dictum, the Horton court cited contempt proceedings as an example of collateral proceedings in which a trial court would continue to have jurisdiction to act despite the filing of a notice of appeal. 822 So.2d at 434 n. 1. However, this court has held that “ ‘ “a trial court’s failure to rule on a contempt motion relating to an interlocutory order would render any subsequent judgment nonfinal because the filing of the contempt motion would not be considered as having initiated a separate proceeding,” ’ ” Powers v. Nikonchulc, 142 So.3d 713, 715-16 (Ala.Civ.App.2013) (quoting Burkhalter v. Burkhalter, 98 So.3d 554, 555 (Ala.Civ.App.2012), quoting in turn Decker v. Decker, 984 So.2d 1216, 1220 (Ala.Civ.App.2007)), which suggests that a contempt motion relating to an interlocutory order is not a collateral matter in which the trial court has continuing jurisdiction to act after the filing of a notice of appeal. However, we need not resolve the issue whether the filing of the mother’s notice of appeal on May 23 deprived the juvenile court of jurisdiction to entertain the May 30 motion because, even if it did not, the June 3 contempt citation is void because the May 16 order, entered in violation of the mother’s procedural-due-process rights, is void. See In re Willis, 242 Ala. 284, 289, 5 So.2d 716, 719 (1941) (“[T]he authorities are all in accord that an injunction issued in viola *613 tion of a statute requiring notice is void and will not support a charge of contempt for its violation.” (emphasis added)).
The mother also argues that the June 12 order and the pick-up orders issued pursuant to the June 12 order are void. This argument, like the mother’s previous arguments, presents an issue of law; therefore, our standard of review is de novo. See Howard, supra. The June 12 order and the pick-up orders issued pursuant to the June 12 order were predicated on the May 16 order, which is void. Therefore, the June 12 order and the pickup orders issued pursuant to the June 12 order are likewise void. See 50 C.J.S. Judgments § 754 (2009) (“All subsequent actions predicated on a void judgment are tainted by the judgment’s nullity and are similarly -without effect.” (footnote omitted)). Because the May 16 order, the June 3 contempt citation, the June 12 order, and the pick-up orders issued pursuant to the June 12 order are all void orders and because a void order will not support an appeal, see, e.g., Landry v. Landry, 91 So.3d 88, 90 (Ala.Civ.App.2012) (“A void judgment will not support an appeal.”), we dismiss the mother’s appeal, albeit with instructions for the juvenile court to vacate the May 16 order, the June 3 contempt citation, the June 12 order, and the pick-up orders issued pursuant to the June 12 order, see, e.g., Landry, 91 So.3d at 90 (dismissing an appeal and a cross-appeal taken from a void judgment but instructing the trial court to vacate that void judgment).
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. The record contains a motion alleging that, upon the death of the father, the mother had agreed that the children could stay with the paternal grandparents through the end of the school year so that the children would not have to change schools and that the paternal grandparents had agreed that the mother could have unsupervised and unrestricted visitation with the children.

. Although the May 16 order was interlocutory and an appeal will not ordinarily lie from an interlocutory order, see, e.g., Pike v. Reed, 3 So.3d 201, 203 (Ala.Civ.App.2008) (“Subject to limited exceptions not applicable in this case, ' " ‘ "an appeal will lie only from a final judgment.” ’ " ' " (quoting earlier cases)), the May 16 order restrained the mother from taking the children out of the juvenile court's geographical jurisdiction and, thus, was in-junctive in nature. See Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 690 (Ala.2009) (" ‘An injunction is' defined as “[a] court order commanding or preventing an action.” Black's Law Dictionary 788 (7th ed.1999).’ ” (quoting Dawkins v. Walker, 794 So.2d 333, 335 (Ala.2001))). "An appeal may be taken from ‘any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.' Rule 4(a)(1)(A), Ala. R.App. P." Watson v. Watson, 910 So.2d 765, 768 (Ala.2005). Moreover, the mother’s notice of appeal was timely filed because she filed her notice of appeal within 14 days of the entry of the May 16 order. See Rule 4(a)(1)(A), Ala. R.App. P. Therefore, the mother’s notice of appeal successfully invoked this court’s jurisdiction.